THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD PENCE, Defendant-Appellant.

First District (2nd Division)   No. 1—92—3032

Opinion filed October 11, 1994.

Rita A. Fry, Public Defender, of Chicago (Lester Finkle, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Sang Won Shim, and Lisa Swafford, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE DiVITO delivered the opinion of the court:

Defendant Edward Pence appeals from his convictions on two counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1) (now 720 ILCS 5/12—14(b)(1) (West 1992))), for which he was sentenced to two consecutive, 45-year extended terms of imprisonment, for a total of 90 years. He presents as issues for review whether: (1) the mandatory imposition of consecutive sentences was error; (2) the circuit court erred in sentencing him to extended terms; (3) his total sentence was excessive; and (4) the prosecutor's remarks in closing argument denied him a fair trial.

Rudy C. testified that he was 10 years old and attended third grade. In August 1989, when Rudy was seven years old, he belonged to a Cub Scout troop of which defendant was the leader. The troop met every Saturday at a local church and then went to a nearby basement meeting hall.

In early August 1989, Rudy went into the church bathroom during a scout meeting. Defendant followed Rudy into the bathroom and kissed him, using his tongue.

On the day after Rudy's eighth birthday, August, 4, 1989, the scouts gathered in the basement to watch a movie. Defendant took Rudy into a back room, pulled down Rudy's pants and underwear,

picked Rudy up from his legs, and "sucked his penis like a baby." Defendant cautioned Rudy not to tell anyone what had happened.

At another Cub Scout meeting just before Thanksgiving of 1989, defendant again followed Rudy into the bathroom. Defendant kissed Rudy with his tongue, pulled down Rudy's pants and underwear, lifted Rudy to the sink, and sucked Rudy's penis for about two minutes. Afterwards, defendant warned Rudy not to tell anyone.

Sometime between Thanksgiving and Christmas of 1989, the Cub Scout group met to watch an Eddie Murphy movie. Defendant grabbed Rudy by the wrist and took him into the back room. Defendant pulled down his own pants and underwear, grabbed Rudy's shoulders, and forced Rudy to suck his penis. Defendant then pulled down Rudy's pants and underwear, picked Rudy up like a baby, and sucked Rudy's penis. The occurrences in the back room lasted about three minutes. Defendant threatened to hurt Rudy's parents if he told anyone.

In January 1990, the Cub Scout troop met in the basement to watch another movie, "Police Academy II." Defendant called Rudy to the back to help him bag popcorn. Rudy and another scout named Steven went to assist defendant, who proceeded to kiss both Rudy and Steven with his tongue. Defendant then masturbated until white stuff came out of his penis into a cup. Defendant discarded the cup and walked out of the room, saying nothing to the boys.

On March 10, 1990, Rudy attended another Cub Scout meeting in the basement. As Rudy was sitting down, defendant grabbed his shirt and pulled him into the back room. Defendant pulled down his own pants and underwear, grabbed Rudy's hair, and forced Rudy to suck his penis for one to two minutes. Defendant then masturbated until white stuff came out of his penis, some of which landed on Rudy's leg. Defendant gave Rudy some toilet paper to wipe it off and told him not to tell anyone.

Shortly thereafter, Rudy asked his older sister whether he had any glue in his body. Rudy told her that defendant made him suck defendant's penis, and defendant sucked his penis. Rudy thought glue was in his body because defendant had showed him the glue which came out of his penis. The next day, accompanied by his sister, Rudy told defendant's boss, Juanita, that defendant had kissed him with his tongue. Juanita said she was busy and would talk with Rudy later. Rudy next told his mother that defendant had touched Steven. When she expressed relief that at least it had not happened to Rudy, he told her it had. Rudy's mother called the police and took him to see a doctor.

Steven S. testified for the State that he was 10 years old and

attended sixth grade. In January 1990, while the other scouts were watching a movie, he and Rudy went into the back room to help defendant prepare popcorn. Defendant kissed them and then masturbated. Defendant threatened Steven that if he told anyone, defendant would kill his parents. Steven told no one until the police came to his house.

Rudy's sister testified that on March 20, 1990, Rudy asked her if he had glue inside his body. When she asked why, Rudy said defendant had put his penis in Rudy's mouth and had sucked Rudy's penis. The next day she and Rudy spoke with Juanita. The day after that they spoke with police. Rudy's mother testified that after speaking with Rudy on March 22, 1990, she called the police and took him to see a doctor.

Dr. Harivadan K. Gandhi, an expert in pediatric child sexual abuse, testified that he examined Rudy in his office on March 23, 1990. Rudy told him that defendant had fondled and touched him. Dr. Gandhi took cultures from Rudy's throat, urethra, and rectum, and also took a blood sample. A culture taken from Rudy's mouth tested positive for gonorrhea. Dr. Gandhi's opinion was that Rudy had been sexually abused.

Detective James P. Butler of the Chicago police department testified that, after an initial investigation, he arrested defendant at his home. Defendant remarked, "I know why you're here; that it's about Rudy." Defendant was transported to Area Two, where he initially denied assaulting Rudy. Later defendant said: "I know I need help. I need counseling. I'll tell you the truth about what happened." He then gave a statement in which he admitted having oral sex with Rudy.

Assistant State's Attorney Diane Walsh testified that she reduced the statement to writing. Defendant signed the statement after reading it and making corrections. Walsh read defendant's statement to the jury.

Juanita Pacheco testified for the defense concerning volunteer work that defendant had performed for the community. Rudy and his sister spoke with her sometime in March 1990. She relayed the substance of that conversation to a church pastor.

Defendant testified in his own behalf and denied assaulting Rudy. He claimed to have signed the statement only because Detective Butler told him he would not go to jail. In rebuttal, the State presented several witnesses including Detective James Cloonan of the Chicago police department. Cloonan testified that he was the only officer who was ever alone with defendant. Neither he nor Detective Butler made any promises to defendant. Prior to trial, the circuit

court had denied defendant's motion to suppress his statement after a full hearing.

The jury found defendant guilty as charged. During the sentencing hearing, the State presented witnesses in aggravation. Two other boys, Timothy B. and Shaun G., testified that defendant had sexually assaulted them. Timothy B.'s therapist stated that Timothy qualifies as mentally retarded. Shaun G.'s legal guardian testified that, after being contacted by Rudy's grandmother, she took Shaun to a doctor who detected the venereal disease chlamydia in his throat and rectum. Rudy's mother related Rudy's behavioral changes since the assaults.

The circuit court held that section 5—8—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4 (now 730 ILCS 5/5—8—4 (West 1992))) mandated consecutive sentences for the two counts. In addition, it found defendant eligible for extended-term sentences since Rudy was under 18 years of age. After considering aggravating and mitigating factors, the court sentenced defendant to two consecutive, 45-year extended terms of imprisonment, for a total of 90 years. Defendant appeals.

Defendant initially contends that the circuit court's mandatory imposition of consecutive sentences is error because the offenses were not part of a single course of conduct.

■ The State first responds that defendant waived review of this contention by failing to file a motion for reconsideration of his sentences or a post-sentencing motion. No such motion is required to preserve a sentencing issue on appeal. (*People v. Lewis* (1994), 158 Ill. 2d 386, 391, 634 N.E.2d 717, 720.) The State's waiver argument fails.

■ The State next counters that the offenses were part of a single course of conduct. Section 5—8—4(a) of the Unified Code of Corrections provides in pertinent part:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless *** defendant was convicted of a violation of Section 12—13 or 12—14 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively." (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—4(a) (now 730 ILCS 5/5—8—4(a) (West 1992)).)

Interpreting this section, our supreme court recently determined that the imposition of consecutive sentences is *mandatory* where: (1) a defendant is convicted of criminal sexual assault or aggravated criminal sexual assault; and (2) the conviction is for offenses which were committed as part of a single course of conduct. (*People v. Bole*

(1993), 155 Ill. 2d 188, 197, 613 N.E.2d 740, 744.) Consecutive sentences remain *discretionary* where: (1) a defendant is convicted of criminal sexual assault or aggravated criminal sexual assault; and (2) the conviction is for offenses which were multiple acts committed in separate courses of conduct. (*Bole*, 155 Ill. 2d at 197, 613 N.E.2d at 744.) The *Bole* court noted this result is anomalous, but determined that the plain language of section 5—8—4(a) nevertheless requires it. *Bole*, 155 Ill. 2d at 198, 613 N.E.2d at 745.

Here, defendant was convicted of two counts of aggravated criminal sexual assault. According to *Bole*, the factor determinative of whether consecutive sentences are mandated or discretionary is whether defendant committed those offenses as part of a single course of conduct, despite any anomalous result. The circuit court, ruling before *Bole* was handed down, never considered this issue, finding that consecutive sentences were mandatory in either event.

In *Bole*, the defendant assaulted his young victim on three different dates: February 22, 1989; February 27, 1989; and March 1, 1989. (*Bole*, 155 Ill. 2d at 194, 613 N.E.2d at 743.) The supreme court held that those offenses were not committed as part of a single course of conduct because they were "separate events, committed several days apart, with substantial interruptions in time." *Bole*, 155 Ill. 2d at 194, 613 N.E.2d at 743.

■ The same is true of defendant's offenses in the instant case. The indictment's first count charged defendant with contact between his penis and the victim's mouth "on or about August 1, 1989, and continuing on through March 10, 1990." Similarly, the second count charged defendant with contact between his mouth and the victim's penis "on or about August 1, 1989, and continuing on through March 10, 1990." The jury was presented with evidence that defendant assaulted the victim on many different dates: early August 1989; August 4, 1989; around Thanksgiving 1989; between Thanksgiving and Christmas 1989; January 1990; and March 1990. The jury returned general verdicts of guilty based on all the evidence presented. Consequently, although there was evidence from which the jury *could* have concluded that two of the offenses were part of a single course of conduct, the language of the charging document, the evidence at trial, and the general verdict of the jury do not permit the "single course of conduct" conclusion required by *Bole* for mandatory consecutive sentencing.

Consequently, we vacate defendant's sentences and remand to the circuit court with directions that it resentence defendant in light

of *Bole.* See *People v. Edwards* (1994), 259 Ill. App. 3d 151, 156-57, 630 N.E.2d 1266, 1272 (and cases cited therein).[1]

■ Given our holding, it would be premature to address defendant's contentions that the circuit court erred in sentencing him to extended-term sentences by using the victim's age as double enhancement, and that his total 90-year sentence is grossly excessive, particularly when compared to the sentences received by other sex offenders. We do note that a series of court decisions have found extended-term sentences proper in this instance. (*People v. Ferguson* (1989), 132 Ill. 2d 86, 547 N.E.2d 429; *People v. Moss* (1993), 260 Ill. App. 3d 272, 630 N.E.2d 850; *People v. Carter* (1993), 244 Ill. App. 3d 792, 614 N.E.2d 452; *People v. Coleman* (1990), 205 Ill. App. 3d 567, 563 N.E.2d 1010.) We further note that our supreme court has rejected the argument that reviewing courts should consider the length of sentences imposed on other offenders as a reason to vacate a sentence imposed by a circuit court in its considerable discretion. *People v. Johnson* (1992), 149 Ill. 2d 118, 158, 594 N.E.2d 253, 273 (declining to conduct "proportionality review"); *People v. Perez* (1985), 108 Ill. 2d 70, 92, 483 N.E.2d 250, 260.

■ Defendant lastly asserts that the prosecutor's remarks in closing argument denied him a fair trial. Acknowledging that he has waived any challenge to the remarks by failing to object contemporaneously and to raise the issue in a post-trial motion (see *People v. Robinson* (1993), 157 Ill. 2d 68, 83, 623 N.E.2d 352, 358), he requests this court to review the comments pursuant to the plain error doctrine.

Plain error is a narrow, limited exception to the waiver rule that is properly applied only when the question of guilt is close and the evidence in question might have substantially affected the outcome, or an error was so substantial as to deprive the trial of fairness. (*People v. Sanders* (1983), 99 Ill. 2d 262, 273, 457 N.E.2d 1241, 1246.) Here, the evidence of defendant's guilt was overwhelming. Not only was his detailed confession published in full for the jury, but the victim's testimony concerning the assaults was unimpeached and corroborated by the diagnosis of venereal disease. No error occurred

---

[1]The dissent disagrees with this result and would affirm defendant's consecutive sentences, holding as a matter of law that his convictions are for offenses which were committed as part of a single course of conduct. This conclusion rests upon the dissent's assertion that both offenses occurred on the same date within minutes of each other. We cannot agree with this view, as it ignores the language of the indictment, the evidence that defendant assaulted the victim on numerous other dates, and the general verdict of the jury.

which deprived defendant of a fair trial. His convictions are therefore affirmed.

For the reasons set forth in this opinion, defendant's convictions are affirmed, his sentences are vacated, and the cause is remanded to the circuit court for resentencing.

Affirmed in part; vacated and remanded in part.

McCORMICK, J., concurs.

JUSTICE HARTMAN, concurring in part and dissenting in part:

I agree that defendant's convictions should be affirmed; however, I disagree with the majority's conclusion that this case should be remanded for resentencing in light of *People v. Bole* (1993), 155 Ill. 2d 188, 613 N.E.2d 740. Accordingly, I dissent from that portion of the majority's opinion.

In *Bole*, defendant was indicted for seven acts of criminal sexual assault of his stepdaughter, which occurred during the period from February 19, 1989, to March 5, 1989. (*Bole*, 155 Ill. 2d at 191.) He pleaded guilty to three of those counts and the State nol-prossed the four remaining charges. (*Bole*, 155 Ill. 2d at 191.) In determining whether defendant's offenses were committed as part of a single course of conduct, the court stated:

> "Section 2—4 of the Criminal Code of 1961 defines the term 'conduct' as 'an act or a series of acts, and the accompanying mental state.' [Citation.] The phrase 'course of conduct' is not separately defined. Given the meaning of 'conduct' and the normal acceptation of 'course of conduct,' we conclude that the phrases could include a range of activity and that it is not necessarily confined to a single incident.
>
> *** According to the evidence presented at the sentencing hearing, [defendant's three] offenses were part of a longstanding pattern of sexual abuse inflicted by the defendant against the victim. We do not believe, however, that the defendant's offenses were committed as part of a single course of conduct, as that phrase is used in section 5—8—4(a). The present offenses occurred on three different days: February 22, 1989, February 27, 1989, and March 1, 1989. They were separate events, committed several days apart, with substantial interruptions in time." *Bole*, 155 Ill. 2d at 193-94.

The parties agree that *Bole* is dispositive of this case, but characterize defendant's offenses differently. According to defendant, the offenses involved six different dates spanning $7^1/_2$ months: early August 1989; August 4, 1989; around Thanksgiving 1989; between

Thanksgiving and Christmas 1989; January 1990; and March 1990. Therefore, he concludes, as in *Bole*, his multiple assaults cannot constitute a single course of conduct.

The State focuses on a single date, the day sometime between Thanksgiving and Christmas of 1989, and notes that both counts charged in the indictment occurred on that date at the same time. Rudy's testimony concerning the day between Thanksgiving and Christmas of 1989 established that, within a three-minute time span, defendant forced Rudy to suck defendant's penis and then defendant sucked Rudy's penis. The State distinguishes *Bole*, where the three offenses defendant was convicted of all occurred on different dates, making them separate courses of conduct. (*Cf. Bole*, 155 Ill. 2d at 194.) The offenses here involve a single course of conduct since they occurred on the same date, the State concludes.

I agree with the State's position and would hold, as a matter of law, that defendant's convictions are for offenses which were committed as part of a single course of conduct. Accordingly, consecutive sentences would be mandated as a matter of law. I would then affirm defendant's sentences and his convictions.