THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER ASKEW, Defendant-Appellant.

First District (2nd Division)   No. 1—93—0030

Opinion filed May 16, 1995.—Modified on denial of rehearing July 25, 1995.

Michael J. Pelletier and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael P. Golden, and Janet Powers Doyle, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Defendant Christopher Askew was found guilty by a jury of first degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—1 (now 720 ILCS 5/9—1 (West Supp. 1993))) and two counts of armed robbery (Ill. Rev. Stat. 1991, ch. 38, par. 18—2 (now 720 ILCS 5/18—2 (West 1992))) and was sentenced to natural life and 60 years, respectively, to be served concurrently. He now appeals.

The following evidence was adduced at trial: Irma Gutierrez (Irma) testified that after midnight on September 9, 1990, she pulled her car to the side of the road and spoke with her passenger, Juan Magallanes (Juan), about their son. The area was well lighted, and shortly after she stopped, four men walked by and peered into the car. One of the men, later identified as defendant, rushed over to Irma's side of the car, and as Juan pushed Irma's head toward the floor, defendant fired his pistol through the open window on the driver's side, wounding Juan.

Defendant then ordered Irma and Juan out of the car. After Juan was searched by one of the four men, he fell to the ground, and as Irma ran over to Juan, she saw her car being driven away, stop to let someone into the back seat, and then resume its course. Juan's wounds proved fatal.

On September 20, 1990, Irma was called to Area Two police head-quarters where, after viewing a lineup for "a couple of seconds," she misidentified Tony Clark as the man who shot Juan. On October 2, 1990, she returned to Area Two and informed a detective that she had previously identified the wrong man. Subsequently, after viewing a second lineup, she identified defendant as the man who shot Juan.

At trial, Irma identified defendant as the man who fired a pistol over her head and ordered her and Juan out of the car. She further testified that her purse, which was in the back seat of her car, contained only $20 and that a "shop vac" (a small vacuum) was in the trunk.

Another State witness, Dnardo Mack (Dnardo), testified that during the evening in question, he, Willie Reavers (Willie), Gary Henry (Gary), and defendant agreed to "go tear off some money," meaning to rob someone. After Gary opened a "gym bag," revealing a sawed-off shotgun, a .22-caliber pistol, a .32-caliber pistol, and a pair of rubber gloves, all four men started toward a neighborhood which was composed mainly of Mexicans. According to Dnardo, they proceeded in that direction because defendant stated that he "only robbed Mexicans *** because they didn't speak the language[,] [and] wouldn't tell nobody."

Dnardo further testified that upon passing Irma's car, defendant announced that "he was fitting to get the Mexicans" and ran over to the driver's side, where Irma was sitting. Defendant pointed the .22 into the car, told the occupants to "[g]et the fuck out the car," and seconds later fired the pistol. Meanwhile, Willie "grabbed the gloves out of the bag and put them on," and Gary aimed the shotgun at Juan.

Responding to defendant's command, Juan and Irma exited the vehicle and Willie searched Juan, who was bleeding out of his neck and fell to the ground during the search. After the search, Willie joined Gary and defendant in the car and they drove away, stopping to pick up Dnardo, who had fled the scene. Two other witnesses testified that they had heard the shooting. One, who ran outside to help Irma, observed her car turn on 81st Street and pick up a man who appeared to be wearing a red jacket; Dnardo testified that he was wearing a red T-shirt on the night of the incident.

Dnardo continued, stating that after the incident they parked the car in an alley, grabbed the purse, and ran away, while Willie took off and threw away his gloves. According to Dnardo, they divided the $20 in Irma's purse, and, remembering that they had neglected to remove their fingerprints from the car, they returned to the alley. There, defendant searched the trunk, carried away a "car-vac," and

threw the keys in the alley. When the police discovered Irma's car that night, it was in an alley, along with her keys and a rubber glove.

Sometime later, the police arrested Dnardo and charged him with first degree murder and armed robbery for his role in this incident, as well as with armed robbery in an unrelated case. In exchange for his testimony and his guilty plea to having committed the armed robberies, the State agreed to drop the murder charge and recommend that he receive the minimum of six years for each robbery charge, to be served consecutively.

After defense counsel cross-examined Dnardo regarding his agreement with the State, the prosecutor was permitted, on redirect and over objection, to elicit testimony from Dnardo showing that on the night of his arrest, he gave a statement taken by a court reporter which substantially tracked his testimony at trial. Dnardo's testimony regarding his statement was corroborated by Assistant State's Attorney Tim Joyce.

On re-cross, defense counsel introduced two affidavits Dnardo signed while incarcerated in Cook County jail, each indicating that his statement was not true but made out of fear of the police. On redirect, the State questioned Dnardo concerning the impact his gang membership had on his signing the affidavits. Dnardo responded that Gary and defendant told him that if he refused to sign the "jail house" affidavits he would be "violated," meaning they would "beat you up real bad." Defendant objected to this line of questioning, but was overruled.

Robert Bell (Bell) testified that he lived across the street from defendant's girlfriend's house, where defendant often lived, and that on September 13, 1990, he saw defendant on the porch of that house with a shotgun and a pistol. Bell notified the police, and they discovered three guns, including a .22 pistol, all hidden under the cushions of a couch located in the alley between Bell's and defendant's girlfriend's home. Ballistic tests on both the .22 pistol and the bullet recovered from Juan's body revealed that the bullet had the same "class characteristics" as the pistol, but it was uncertain whether the bullet had been fired from the pistol.

Defendant called one witness, Officer Joanne Ryan, who testified regarding the circumstances surrounding the lineup at which Irma had mistakenly identified another man as the assailant in this case. Thereafter, the jury found defendant guilty of first degree murder of Juan, and of armed robbery of both Irma and Juan. Defendant's motion for a new trial was denied, and the case proceeded to sentencing, where the trial judge found defendant eligible for the death penalty, but after hearing aggravating and mitigating evidence, sentenced

him to life imprisonment for his murder conviction and an extended-term sentence of 60 years for his armed robbery convictions.

■ Defendant argues that Dnardo's statement was inadmissible as a prior consistent statement. Prior consistent statements are not admissible except to rebut a charge or inference that the witness is motivated to testify falsely or that his testimony is recently fabricated. Further, the consistent statement must have been made before the time of the fabrication or the existence of the motive to lie. *People v. Williams* (1991), 147 Ill. 2d 173, 227, 588 N.E.2d 983, 1003; *People v. Wheeler* (1989), 186 Ill. App. 3d 422, 426-27, 542 N.E.2d 524, 526.

Relying on *People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234, defendant maintains that in cross-examining Dnardo about his plea, the implication was that his motive to fabricate predated his arrest and thus predated his statement, making it void of any rehabilitating effect. In *Henderson,* during cross-examination, the defense counsel insinuated that on direct the witness was motivated to lie in order to protect his brother and a man "who was like a cousin to him." The State responded by corroborating the witness' direct testimony with his prior consistent statement to the police. The supreme court held that the statement was inadmissible because the witness' motive to protect his brother and "cousin" predated his statement to the police. *Henderson,* 142 Ill. 2d at 309-10, 568 N.E.2d at 1259.

■ Here, however, unlike *Henderson,* during cross-examination, defendant focused on Dnardo's motive to fabricate engendered by the terms of his plea, which post-dated his statement. Defendant highlighted that without the plea Dnardo faced "as much as 90 years" in jail compared to the 12 years the State was going to recommend. Defendant also insinuated that Dnardo's agreement with the State was contingent on the jury's finding defendant guilty.

Moreover, defendant fails to show that the sequence of events surrounding Dnardo's arrest demonstrated that Dnardo had a motive to lie when he made his statement or that he made the statement in exchange for any promise of leniency or favorable treatment. (*People v. Ashford* (1988), 121 Ill. 2d 55, 71, 520 N.E.2d 332, 338.) On the contrary, the record shows just the opposite. Dnardo stated that no one discussed the possibility of his testifying against any of his codefendants in this case until sometime after he gave his statement; and Assistant State's Attorney Joyce testified that while making the statement, Dnardo's constitutional rights were properly observed, and no promises had been made to him at that time.

Moreover, defendant opened the door for the introduction of

Dnardo's prior consistent statement by implying that his direct testimony was rehearsed during his "several conversations" with the prosecutors over a period of two months prior to trial. (*People v. Ollins* (1992), 235 Ill. App. 3d 158, 165, 601 N.E.2d 922, 927 (defense counsel's implying that witness had rehearsed his testimony with prosecutors amounted to a charge of recent fabrication).) Therefore, we hold that the court was not in error in admitting Dnardo's statement.

Next, defendant challenges his sentencing, arguing that the trial judge improperly found him eligible for the death penalty (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(b)(6) (now 720 ILCS 5/9—1(b)(6) (West Supp. 1993))); improperly focused on Juan's death as a statutory aggravating factor (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(a) (now 730 ILCS 5/5—5—3.2(a) (West Supp. 1993))); and failed to consider relevant mitigating factors (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.1 (now 730 ILCS 5/5—5—3.1 (West 1992))). He also contends that his extended-term sentence of 60 years for armed robbery was excessive because it was not the most severe offense of which he was convicted, citing *Henderson* (142 Ill. 2d at 332-33, 568 N.E.2d at 1269-70).

The State maintains that defendant waived all of these sentencing issues by failing to object to them at trial and to include them in his post-trial motion. (*People v. Beals* (1994), 162 Ill. 2d 497, 510-11, 643 N.E.2d 789, 796.) In *Beals*, the defendant challenged his sentence, arguing, *inter alia*, that the trial court erred in finding him eligible for a natural life sentence since the circumstances allowing for such a sentence were not present in his case. The supreme court held that the defendant waived review of that issue, stating:

> "As the State points out, the defendant waived this issue by failing to object at trial and to include this issue in his post-trial motion." *Beals*, 162 Ill. 2d at 510-11, 643 N.E.2d at 796, citing *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

Six months prior to *Beals*, in *People v. Lewis* (1994), 158 Ill. 2d 386, 634 N.E.2d 717, the supreme court held that section 5—8—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(c) (now 730 ILCS 5/5—8—1(c) (West 1992))) did not "require" but only "permitted" a defendant to file a post-trial motion to reduce his sentence and that, therefore, such a motion was not needed to preserve properly any error that might have occurred upon sentencing.[1] (*Lewis*, 158 Ill. 2d at 390, 634 N.E.2d at 719.) Defendant urges this court to follow *Lewis* and also cites a number of

---

[1]Section 5—8—1(c) has recently been amended and, effective August 11,

post-*Beals* decisions that have followed *Lewis. People v. Allen* (1994), 268 Ill. App. 3d 947; *People v. Burrage* (1994), 269 Ill. App. 3d 67; *People v. Brown* (1994), 267 Ill. App. 3d 482, 641 N.E.2d 948; *People v. Pence* (1994), 267 Ill. App. 3d 461, 641 N.E.2d 933; *People v. Keller* (1994), 267 Ill. App. 3d 602, 641 N.E.2d 891.

Although *Lewis* and *Beals* reach apparently opposite conclusions, we note that no attempt was made in *Beals* to distinguish, explain, overrule, or even mention *Lewis.* (*Beals*, 162 Ill. 2d at 510-11, 643 N.E.2d at 796.) However, whether or not we follow *Lewis* or invoke plain error, we are constrained to uphold all but one of defendant's sentencing contentions.

A trial judge is presumed to know the law and apply it properly, and his decision regarding sentencing is entitled to great deference and weight; thus, defendant's sentence will be presumed to be proper absent an affirmative showing of error. (*People v. Buchanan* (1991), 211 Ill. App. 3d 305, 322, 570 N.E.2d 344, 356; *People v. Bowen* (1985), 133 Ill. App. 3d 994, 997, 479 N.E.2d 997, 999.) Moreover, such a sentencing error warrants reversal only if it is palpably erroneous or results in manifest injustice. *People v. Anderson* (1986), 112 Ill. 2d 39, 46, 490 N.E.2d 1263, 1267.

■ In defendant's case, the trial judge was informed as to the correct criminal intent required by section 9—1(b)(6) before making his finding that defendant was eligible for the death penalty. Further, overwhelming evidence existed in the record to show that defendant possessed the mental intent required by that section in order for the judge to sentence defendant as he did. Accordingly, defendant's contention that the judge improperly found that he possessed the requisite criminal intent necessary to impose the death penalty is without merit.

■ Similarly without merit is defendant's assertion that the judge failed to properly consider evidence in mitigation. The record of the sentencing hearing is replete with evidence as to both mitigation and aggravation. (*People v. Rivera* (1991), 212 Ill. App. 3d 519, 526, 571 N.E.2d 202, 207 (evidence in mitigation presented at a sentencing hearing is presumed to have been properly considered absent some indication, other than the sentence, to the contrary).) Furthermore, defendant's claim that the judge focused on Juan's death in sentencing him for first degree murder is unconvincing. The seriousness of

---

1993, "[a] defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing *shall* be made by a written motion filed within 30 days following the imposition of sentence." (Emphasis added.) 730 ILCS 5/5—8—1(c) (West Supp. 1993).

the crime for which a defendant is convicted is a persuasive consideration when sentencing that defendant. (*People v. Brown* (1993), 250 Ill. App. 3d 767, 774, 620 N.E.2d 674, 680.) In any event, defendant was sentenced to life because the evidence presented at trial and at the sentencing hearing showed that he had a substantial history of criminal involvement beginning when he was only 14 years old; that he deliberately sought out Mexican victims; that he shot Juan in cold blood; that the shooting was without provocation; that it was at near point-blank range; and that it was done in front of Juan's girlfriend, in the course of an armed robbery. See 730 ILCS 5/5—5—3.2(a) (West Supp. 1993) (factors in aggravation).

■ However, defendant's contention that his extended-term sentence of 60 years for armed robbery was excessive since it was not the most serious offense of which he was convicted warrants review under the doctrine of plain error. (134 Ill. 2d R. 615(a); *People v. Young* (1989), 128 Ill. 2d 1, 47, 538 N.E.2d 461, 471 (plain error occurs where the evidence is closely balanced or is of such magnitude that it denied the accused a fair and impartial sentencing hearing).) The erroneous imposition of an extended-term sentence on a defendant affects his fundamental right to liberty, and since defendant's challenge to this aspect of his sentencing has merit, in the interest of justice, we choose to review it. *People v. Lindsay* (1993), 247 Ill. App. 3d 518, 527, 617 N.E.2d 389 (finding that the defendant was eligible for an extended term affected substantial rights since it enabled the court to impose a sentence twice the normal maximum).

Defendant maintains that since murder was the most serious offense of which he was convicted, his extended-term sentence of 60 years for armed robbery should be reduced to 30 years, the statutory maximum, nonextended term. *People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234.

Generally, a defendant may receive an extended-term sentence only for the "most serious offense of which [he] was convicted." (*People v. Jordan* (1984), 103 Ill. 2d 192, 206, 469 N.E.2d 569, 575; Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a) (now 730 ILCS 5/5—8—2(a) (West 1992)).) *Jordan*, however, has been held not to prohibit extended-term sentences under certain circumstances, such as where a defendant has been sentenced to death for murder and to an extended term for armed robbery (*People v. Neal* (1985), 111 Ill. 2d 180, 203-05, 489 N.E.2d 845, 855), or where a defendant has been sentenced to life imprisonment for murder and to an extended term for armed robbery (*People v. Young* (1988), 124 Ill. 2d 147, 166, 529 N.E.2d 497, 505-06).

In *Young* the supreme court analyzed section 5—8—2 and stated that "[i]n sentencing for murder, the extended-term statute [section 5—8—2] could have only logically applied to cases where a term-of-years sentence (not less than 20 years and not more than 40 years) might have been imposed under section 5—8—1." *Young*, 124 Ill. 2d at 165, 529 N.E.2d at 505.

More recently, however, and without mentioning *Neal* or *Young*, in *People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234, the supreme court construed section 5—8—2 to require that the defendant's extended-term sentence for aggravated criminal sexual assault be reduced to a nonextended term in light of the defendant's death sentence for his murder conviction. The court simply stated that since "murder was the most serious offense of which defendant was convicted[,] [t]he sentencing judge *** erred in imposing [the] extended-term sentence." *Henderson*, 142 Ill. 2d at 333, 568 N.E.2d at 1270.

Since the result in *Henderson* cannot be reconciled with the reasoning in *Young*, we must assume that it implicitly overrules *Young*. Consequently, we hold that the trial judge erred in imposing an extended-term sentence on defendant for his armed robbery conviction because it was not the most serious offense for which he was convicted. Accordingly, pursuant to Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), we reduce defendant's 60-year sentence for armed robbery to 30 years, the maximum sentence authorized for a Class X felony. Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(3) (now 730 ILCS 5/5—8—1(a)(3) (West Supp. 1993)).

Defendant raises the remaining issues *pro se*. He contends that he was not proven guilty beyond a reasonable doubt because Irma's initial identification of Tony Clark as the shooter rendered her in-court identification unworthy of belief and because Dnardo's testimony, that of an accomplice, was uncorroborated and suspect.

In reviewing the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, 472.) Minor discrepancies in the testimony of witnesses go to the issue of credibility, which must be judged by the trier of fact, and a reviewing court may not substitute its judgment for that of the jury (in this case) on questions involving the weight of the evidence. *People v. Geneva* (1990), 196 Ill. App. 3d 1017, 1026, 554 N.E.2d 556, 562; *People v. Thomas* (1981), 96 Ill. App. 3d 443, 450, 421 N.E.2d 357, 362.

In the case at bar, Irma's misidentification and Dnardo's involvement in the events surrounding the instant crime were fully

revealed to the jury during cross-examination and again addressed by each attorney in closing argument. Additionally, contrary to defendant's contention, Dnardo's testimony was corroborated by the testimony of Irma and other occurrence witnesses and by the physical evidence presented at trial. Finally, the jury was instructed that an accomplice witness' testimony should be considered with caution; and the supreme court has held that such testimony is enough to sustain a conviction, even if uncorroborated. (*People v. Steidl* (1991), 142 Ill. 2d 204, 226-27, 568 N.E.2d 837, 845.) For these reasons, we hold that defendant was proven guilty beyond a reasonable doubt.

Defendant also contends that he was denied a fair trial since Dnardo's references to defendant's gang membership to explain why he signed the two "jail house" affidavits were unfairly prejudicial.

Courts are aware that strong prejudice exists against members of street gangs, but evidence of gang affiliation need not be excluded if it is otherwise determined to be relevant and admissible. (*People v. Wadley* (1988), 169 Ill. App. 3d 1036, 1043-44, 523 N.E.2d 1249, 1255; *People v. Parrott* (1976), 40 Ill. App. 3d 328, 331, 352 N.E.2d 299, 302.) Such a determination rests within the sound discretion of the trial judge and will not be reversed unless a clear abuse of that discretion results in manifest prejudice to the defendant. *People v. Hayes* (1990), 139 Ill. 2d 89, 130, 564 N.E.2d 803, 820.

■ In the instant case, evidence of Dnardo's gang affiliation was introduced on redirect only after defendant introduced the affidavits during cross-examination in an attempt to show that the statement Dnardo made on the day of his arrest was compelled out of fear of the police. Presenting such a challenge to the veracity of Dnardo's statement was obviously done to call into question his in-court testimony and opened the door for the State to counter such a challenge by questioning Dnardo about his motives for signing the affidavits, *i.e.*, threats by fellow gang members.

Additionally, all reference to defendant's gang affiliation was limited to addressing the circumstances surrounding Dnardo's motives for signing the affidavits, except the State's comment during closing argument that all four of the perpetrators were members of the same gang, which, assuming it to be improper, was harmless. (*People v. Warmack* (1980), 83 Ill. 2d 112, 128-29, 413 N.E.2d 1254, 1262 (trial judge's error in admitting the defendant's mug shot bearing an arrest date prior to that of the offense in question was harmless).) Therefore, we hold that Dnardo's reference to defendant's gang membership did not deny defendant a fair trial.

Defendant further argues that the jury could have found that Dnardo's testimony was unbelievable if the court had not rejected his

proffered non-Illinois Pattern Jury Instruction (IPI) which specifically directed the jury to consider whether a witness had been "promised" any consideration for his testimony. *People v. Mostafa* (1971), 5 Ill. App. 3d 158, 166-68, 274 N.E.2d 846, 852-53 (jury had a right to consider whether an accomplice witness had been promised leniency for his testimony).

Applicable IPI instructions are preferred over non-IPI instructions, and they should be used unless they do not accurately state the law. (*People v. Brooks* (1989), 185 Ill. App. 3d 935, 942, 542 N.E.2d 64, 68; 134 Ill. 2d R. 451(a).) Further, "the precedential value of *Mostafa* has been questioned or distinguished in several subsequent appellate court decisions." *People v. King* (1988), 165 Ill. App. 3d 464, 470, 518 N.E.2d 1309, 1314, citing, *inter alia*, *People v. Jackson* (1986), 145 Ill. App. 3d 626, 495 N.E.2d 1207; *People v. Columbo* (1983), 118 Ill. App. 3d 882, 455 N.E.2d 733.

■ In any event, here, the jury instruction concerning the believability of a witness, although not specifically referring to any "promises" made in exchange for a witness' testimony, plainly instructed the jury to consider "any interest, bias, or prejudice [a witness] may have" in testifying. (Illinois Pattern Jury Instructions, Criminal, No. 1.02 (2d ed. 1981) (hereinafter IPI Criminal 2d).) Moreover, the jury was specifically instructed that the testimony of an accomplice "is subject to suspicion and should be considered by you with caution." (IPI Criminal 2d No. 3.17.) These two instructions, combined with the fact that Dnardo's agreement with the State was highlighted by defendant during cross-examination, as well as in closing argument, sufficiently informed the jury of its duty regarding the testimony of an accomplice witness. Consequently, the trial judge did not err by refusing to tender defendant's non-IPI instruction.

Defendant next contends that the introduction of the .22 pistol amounted to prejudicial error since it was not sufficiently connected to either himself or to Juan's murder. In this connection he also asserts that he was unduly prejudiced by the prosecutor's reference during closing argument to the .22 pistol introduced at trial.

After hearing argument on a motion *in limine*, the trial judge determined that there was not enough of a nexus between the .22 pistol found in the alley between Bell's house and defendant's girlfriend's house to show that it was the murder weapon or that it was ever in the possession of defendant. However, the trial judge stated that the .22 pistol could be used for identification purposes, *i.e.*, testimony that a similar gun was used to shoot Juan or was at one time in the possession of defendant.

Weapons are generally admissible when there is proof that they are sufficiently connected to the crime and the defendant. Further, "[w]hen there is evidence the perpetrator possessed a weapon at the time of the offense, a similar weapon *** may be admitted into evidence even though not identified as the weapon used." (*People v. Lee* (1993), 242 Ill. App. 3d 40, 43, 610 N.E.2d 727, 792.) Moreover, a weapon need not be positively shown to have been used in committing the crime, and doubt as to whether it was connected to the crime or to the defendant does not bar its admission, so long as a reasonable jury could find a connection. *Lee*, 242 Ill. App. 3d at 43, 610 N.E.2d at 729.

■ Here, Juan was killed by a .22-caliber bullet; the lands, grooves, and twist of which were consistent with the .22 pistol introduced at trial. Just four days after Juan's death, Bell saw defendant with a pistol resembling a .22, and soon thereafter such a pistol, along with a sawed-off rifle and a shotgun, were found in the alley between defendant's girlfriend's home and Bell's home. Irma testified that Juan was searched by a man with a shotgun. Furthermore, Irma identified the .22 as being similar to a gun that defendant fired over her head. Based on this evidence, we conclude that a reasonable jury could have found that there was a connection between the .22 and defendant or Juan's murder—or both.

During closing argument the State alluded to the ballistics expert's testimony showing the consistencies present between the bullet recovered in Juan's body and the .22 pistol, and reminded the jury of Bell's testimony that defendant was seen with a gun very similar to the .22 only four days after Juan's murder. Thereafter, the State drew the inference that the .22 pistol was the murder weapon defendant used to shoot Juan. Defendant claims that this inference was impermissible in light of the trial judge's earlier *in limine* ruling and amounted to prejudicial error.

■ However, we conclude that the inference drawn by the State was reasonable and based on facts in evidence. (*People v. Jones* (1994), 265 Ill. App. 3d 627, 638, 637 N.E.2d 601, 609.) Further, assuming that such a remark was improper, it does not warrant reversal. A jury is presumed to have followed the instructions given to it, and in the present case, the jury was instructed that closing arguments were not evidence and that any statements made therein which were not based on the evidence should be disregarded. (*People v. Barrow* (1989), 133 Ill. 2d 226, 266, 549 N.E.2d 240, 257.) Finally, defendant fails to show that such a remark "so infected the entire trial proceedings that they denied him a fundamentally fair trial." *People v. Jones* (1993), 156 Ill. 2d 225, 247, 620 N.E.2d 325, 334.

For the foregoing reasons, defendant's first degree murder conviction and armed robbery conviction are affirmed. Defendant's extended-term sentence for his armed robbery conviction is vacated, and we reduce that sentence to 30 years, the maximum authorized term.

Affirmed in part and vacated in part.

HARTMAN and McCORMICK, JJ., concur.