No. 3--02--0005
_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2003

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court
OF ILLINOIS, ) of the 9th Judicial Circuit,
 ) McDonough County, Illinois
 Plaintiff-Appellee, )
 )
 v. ) No. 99--DT--61
 )
THOMAS C. HENDERSON, ) Honorable
 ) William D. Henderson,
 Defendant-Appellant. ) Judge, Presiding.
_________________________________________________________________

 Modified Upon Denial of Rehearing
 JUSTICE HOLDRIDGE delivered the Opinion of the court:
_________________________________________________________________

 A jury found the defendant, Thomas C. Henderson, guilty of driving
under the influence of alcohol (DUI), which is a Class A misdemeanor (625
ILCS 5/11--501(a)(2), (c) (West 1998)). He was sentenced to 30 days'
incarceration in the county jail. The sentencing order also stated that he
was to pay a $2,500 public defender fee (725 ILCS 5/113--3.1(b) (West
2000)). Under section 113--3.1(b), an order imposing a public defender fee
may not exceed (1) $500 for a defendant charged with a misdemeanor; or (2)
$2,500 if the defendant is appealing the conviction of any class offense.
On appeal, the defendant argues that the trial court erred by (1) admitting
doctor-ordered blood test results in evidence where the State failed to
establish the blood sample's chain of custody; and (2) imposing a $2,500
rather than a $500 public defender fee. We affirm.
 BACKGROUND
 At trial, Deputy Sheriff Justin R. Lundgren testified that at
approximately 11:25 p.m. on March 12, 1999, he was called to the scene of a
one-car accident on U.S. highway 67, just outside the town of Industry. A
car driven by the defendant had left the road at "Windmill Curve" and had
"landed out in a field" more than 100 feet from the road. When Lundgren
arrived at the accident scene, emergency personnel were working to extract
the defendant from the vehicle where he was "somewhat trapped." Lundgren
spoke with the defendant, who "smelled of alcoholic beverage" and slurred
his speech.
 Eric Starbuck testified that on the night of the accident, he was a
paramedic for the McDonough District Hospital (MDH) in Macomb. Starbuck
said that after he arrived at the crash site, he began to treat the
defendant. He detected "an odor of alcohol" coming from the defendant.
Starbuck said that he drew a blood sample from the defendant in the
ambulance under a standing order from the hospital's emergency room doctor.
 He testified that the ambulance arrived at the hospital with the defendant
at 12:02 a.m. on March 13, 1999.
 Starbuck stated that it is standard procedure for a patient's blood
sample drawn in the field to accompany the patient in the ambulance. Once
at the hospital, the blood sample is given to hospital staff, who label the
sample to identify that it was collected from the patient. The sample is
then taken by a staff member to the hospital laboratory.
 Lundgren testified that he followed the ambulance to the hospital.
While at the hospital, the defendant told Lundgren that "he had been
drinking alcohol." Lundgren opined that the defendant was under the
influence of alcohol. Lundgren asked the defendant if he would consent to
have a blood sample taken. The defendant agreed. However, shortly
thereafter, the hospital staff told Lundgren that the defendant needed to
be transferred to another hospital because of a spinal injury. Lundgren
did not know whether the hospital staff drew the sample that Lundgren had
requested before the defendant was transported to the other hospital.
 Dr. Arthur Thrasher testified that he was the emergency room doctor
who treated the defendant at MDH. He stated that under his standing
orders, four tubes of blood are drawn from a patient prior to the patient's
arrival at the emergency room. Among other tests, a patient's blood sample
is tested at the hospital lab for the presence of alcohol. The results of
the blood tests then are printed on a lab report. The defendant's lab
report was generated in the regular course of the hospital's business. The
defendant's lab report, which was admitted in evidence over the defendant's
objection, shows that the defendant's blood alcohol content (BAC) was 0.19.
 The hospital's lab report indicates that the patient's name was
"HENDERSON, THOMAS C" and that the emergency room doctor was "THRASHER,
ARTHUR." The report states that the blood sample used for the "ALCOHOL
BLOOD" test was collected at 12:45 a.m. on March 13, 1999. The report
shows that a sample used for a "CHEM 7" test also was collected at 12:45
a.m. The report states that a sample was collected for a "CBC" test at
8:37 a.m. The form authorizing the defendant's transfer to another
hospital, however, indicates that he was transferred at 2:50 a.m. Thrasher
could not explain how the blood sample for the "CBC" test could have been
collected after the defendant was transferred to another hospital.
 The defendant previously had filed a motion in limine to bar the
State from introducing in evidence the hospital's lab report concerning the
defendant's BAC. In the motion, the defendant argued that the blood sample
was requested by Lundgren (under 625 ILCS 5/11--501.2 (West 1998)) rather
than ordered by a doctor (under 625 ILCS 5/11--501.4 (West 1998)). At the
hearing on the motion, the defendant contended that the blood sample must
have been requested by Lundgren at the hospital and could not have been the
blood sample drawn by Starbuck before the defendant arrived at the
hospital. The defendant based this contention on the fact that the blood
sample was collected at 12:45 a.m., which was after the defendant arrived
at the hospital at 12:02 a.m.
 At the hearing, Thrasher testified that the collection time on the
lab report could have been either when the blood sample was drawn from the
defendant's body or when the sample was drawn from the tube at the
laboratory. He stated that the blood sample was ordered by him rather than
requested by Lundgren because it was tested by the hospital's lab rather
than being given to Lundgren and tested by a crime lab. The court denied
the defendant's motion in limine, ruling that the lab report was not a
result of Lundgren's request under section 11--501.2.
 At the conclusion of the trial, the jury found the defendant guilty.
The court imposed a 30-day jail sentence. The sentencing order, dated
November 27, 2001, states that the defendant is to pay a $2,500 public
defender fee. The record does not contain a transcript of the sentencing
hearing or any other proceeding in which the trial judge determined the
amount of the public defender fee. The defendant filed his notice of
appeal on December 26, 2001.
 ANALYSIS
 I. Chain of Custody
 The defendant argues that the trial court erred by admitting in
evidence the lab report concerning the defendant's BAC when the State had
not established a chain of custody for the blood sample on which the lab
report was based.
 In Illinois, a blood sample tested to determine a defendant's BAC may
be taken from a defendant as a result of a request from a law enforcement
officer (625 ILCS 5/11--501.2 (West 1998)), or as a result of a doctor's
order during the regular course of providing emergency medical treatment
(625 ILCS 5/11--501.4 (West 1998)). The results of tests conducted on
blood under section 11--501.4 are admissible as a business record exception
to the hearsay rule when each of the following criteria are met: (1) the
tests were ordered in the regular course of providing emergency medical
treatment and not at the request of a law enforcement officer; (2) the
tests were performed by the laboratory routinely used by the hospital; and
(3) the results of the tests are admissible regardless of the time the
records were prepared. 625 ILCS 5/11--501.4 (West 1998).
 We are asked to determine whether the lab report was admissible in
evidence. We review a trial court's evidentiary ruling for abuse of
discretion. People v. Human, 331 Ill. App. 3d 809, 773 N.E.2d 4 (2002).
 The defendant cites People v. Ethridge, 243 Ill. App. 3d 446, 610
N.E.2d 1305 (1993), for the proposition that under section 11--501.4, the
State is required to show that the defendant's blood was the blood used for
the test to determine BAC. The defendant and the dissent contend that
under Ethridge, the State must establish a chain of custody for the blood
sample that was used for the test. In Ethridge, the court considered
whether the State was required to admit the blood sample as part of the
foundation for admitting the test results. The court said,
 "Defendant cites no authority, and we find none, that requires
 the State to introduce the actual blood serum of defendant as part of
 the foundation for admissibility of the blood-test results under
 section 11-501.4. Rather, the foundational question presented is
 whether it was in fact defendant's blood that was tested and produced
 the result sought to be admitted at trial. Provided the State can
 show that it was defendant's blood that was used to determine
 defendant's BAC, then such BAC test results may be introduced under
 section 11-501.4 if the other criteria for admissibility set forth in
 that section are met." Ethridge, 243 Ill. App. 3d at 464, 610 N.E.2d
 at 1316.
 We disagree with the defendant and the dissent that Ethridge requires
the State to prove the chain of custody for the defendant's blood sample.
In Ethridge, the defendant's argument concerned introducing the actual
blood serum as a foundation to admitting the blood test results. The
Ethridge court held that the State was not required to introduce the actual
blood serum as a foundational matter. In dicta, the Ethridge court then
stated that the usual foundation for evidence must be laid in contrast to
the defendant's foundational argument. The usual foundational rules
dictate that if the results of a blood test are to be used as evidence of a
defendant's guilt, the State must show that it was the defendant's blood
that was tested. The Ethridge court did not mention chain of custody
considerations.
 Our State legislature has determined that lab reports of hospital
blood tests conducted in the regular course of providing emergency medical
treatment are admissible in prosecutions for DUI under the business records
exception to the hearsay rule. 625 ILCS 5/11--501.4 (West 1998). The
foundation requirements for admission of a record under the business
records exception are that (1) the record was made as a record of the
event; (2) it was made in the regular course of business; and (3) it was
the regular course of the business to make a record at the time of the
event or within a reasonable time thereafter. Also, this foundation must
be established through testimony by someone familiar with the business and
its mode of operation. People v. Virgin, 302 Ill. App. 3d 438, 707 N.E.2d
97 (1998).
 In this case, Thrasher was familiar with the hospital's business and
its mode of operation. He testified that (1) the lab report was made as a
record of the collection and testing of the defendant's blood by the
hospital; (2) the report was made during the regular course of the
hospital's business; and (3) it was the hospital's regular course of
business to make such lab reports. The foundational requirements for a
business record, as mentioned in the Ethridge dicta, were met. See
Ethridge, 243 Ill. App. 3d at 464, 610 N.E.2d at 1316. Therefore, the lab
report was admissible as a business record.
 Neither the defendant nor the dissent asserts that the hospital's lab
report was inadmissible as a business record. Instead, their argument is
that to be admissible as a business record, the State must show the chain
of custody of a blood sample which was in the hospital's custody and never
in the State's custody. Neither the defendant nor the dissent has cited
any authority for the proposition that the State must establish a chain of
custody for an object described in a document admitted under the business
record exception to the hearsay rule. This court's research has uncovered
no authority for such a proposition.
 Under case law, the State only must establish a chain of custody when
a blood sample is drawn under section 11--501.2 at a law enforcement
officer's request and is then immediately taken into the officer's custody.
 See 625 ILCS 5/11--501.2 (West 1998); People v. Lach, 302 Ill. App. 3d
587, 707 N.E.2d 144 (1998). In Lach, the defendant argued that the State
failed to establish a chain of custody under section 11--501.4. The Lach
court ruled that for BAC test results to be admissible, the State is only
required to comply with the foundational provisions in the statute and that
a chain of custody is not required. Neither the defendant nor the dissent
mentions the holding of Lach.
 An item described in a business record is, by definition, in the
custody of the business that generated the record rather than in the
State's custody. On the one hand, it is logically consistent to require
the State to prove chain of custody under section 11--501.2 for a blood
sample that is drawn in the presence of an officer and is continuously in
the State's custody once it is given to the officer by the physician. On
the other hand, it would be logically absurd for us to require the State to
prove chain of custody under section 11--501.4 for a blood sample that was
continuously in a hospital's custody and never in the State's custody.
 In the present case, the State complied with the provisions of
section 11--501.4. The defendant's blood test was ordered in the regular
course of emergency medical treatment and not requested by Lundgren or any
other law enforcement officer. The test was performed at the hospital's
own laboratory. The defendant's lab report was admissible as a business
record regardless of the time that it was prepared. Therefore, the trial
court did not abuse its discretion by admitting the lab report in evidence
without the State establishing a chain of custody for the defendant's blood
sample.
 II. Public Defender Fee
 As part of the defendant's sentence, the trial court ordered the
defendant to "reimburse McDonough County for Public Defender fees in the
amount of $2,500." The defendant submits that the trial court erred by
ordering him to pay a $2,500 rather than a $500 public defender fee. He
contends that his public defender fee should be reduced to $500 because he
was convicted of a misdemeanor. He argues that the defendant was not
appealing at the time the judge ordered the fee, and therefore, the judge
was not authorized to order him to pay the $2,500 fee. The State submits
that the defendant has not provided us with a record adequate to support
his contention. We agree with the State.
 "Whenever *** the court appoints counsel to represent a defendant,
the court may order the defendant to pay to the Clerk of the Circuit Court
a reasonable sum to reimburse either the county or the State for such
representation." 725 ILCS 5/113--3.1(a) (West 2000). "Any sum ordered
paid under this Section may not exceed $500 for a defendant charged with a
misdemeanor, $5,000 for a defendant charged with a felony, or $2,500 for a
defendant who is appealing a conviction of any class offense." 725 ILCS
5/113--3.1(b) (West 2000).
 As the appellant, the defendant bears the responsibility of
presenting us with the record. People v. Thurmond, 317 Ill. App. 3d 1133,
741 N.E.2d 291 (2000). The lack of such a record from the trial court
requires that we affirm issues which may depend on missing facts for their
resolution. People v. Scruggs, 161 Ill. App. 3d 468, 514 N.E.2d 807
(1987). Absent an affirmative showing of error in the record, a trial
judge is presumed to know the law and to apply it properly. People v.
Askew, 273 Ill. App. 3d 798, 652 N.E.2d 1041 (1995).
 In this case, the defendant was ordered to pay a $2,500 public
defender fee "to McDonough County." Under the plain language of the
statute, the defendant could be ordered to pay the clerk of the McDonough
County Circuit Court to reimburse the county or the State for the
defendant's court-appointed representation.
 The defendant's notice of appeal was filed within 30 days following
the sentencing order. His notice of appeal is the first indication in the
record that the defendant was appealing. However, the defendant has not
supplied us with a record of the sentencing hearing in which the $2,500
public defender fee was imposed. Without a record of that hearing, we must
presume that the trial judge knew that the defendant was appealing when the
judge imposed the $2,500 fee because the judge is presumed to know and
apply the law. See Askew, 273 Ill. App. 3d 798, 652 N.E.2d 1041.
Furthermore, the defendant currently "is appealing," making the issue moot.
 See 725 ILCS 5/113--3.1(b) (West 2000). Therefore, we cannot say that the
trial judge erred by ordering the defendant to pay a $2,500 public defender
fee.
 CONCLUSION
 For the foregoing reasons, we affirm the judgment of the McDonough
County circuit court.
 Affirmed.
 SLATER, J., concurs.
 MCDADE, P.J., dissents.

PRESIDING JUSTICE McDADE dissents:
_________________________________________________________________

 The majority appears to hold that as long as the three-pronged
statutory requirement for admission of blood test results as a business
record has been met, there is no requirement that the State prove that the
blood which was tested was drawn from defendant. With all due respect, I
find that decision to be logically and legally insupportable, and I
dissent.
 The record shows that McDonough District Hospital paramedic, Eric
Starbuck, testified that, pursuant to a standing order from the hospital's
emergency room doctor, he drew blood from defendant in the ambulance at the
accident site. The ambulance arrived at the hospital at 12:02 a.m., so
that blood had to have been drawn sometime between 11:25 p.m., when the
crash occurred, and 12:02 a.m.
 In his testimony, Dr. Arthur Thrasher, the emergency room doctor,
confirmed his standing order that four tubes of blood be drawn prior to the
patient's arrival at the emergency room. Upon arrival at the hospital,
that blood is marked and subjected to a variety of tests, including one for
the presence of alcohol. Dr. Thrasher also testified that the blood which
was the subject of the lab report had to have been taken pursuant to his
order rather than Deputy Lundgren's request because it was tested by the
hospital's lab. Dr. Thrasher did not testify that he ever ordered other
blood to be drawn from defendant.
 There is no lab test result purporting to be for blood collected or
turned in and labeled prior to 12:45 a.m. There is also no evidence either
that the test blood was that drawn earlier or that blood was drawn from the
defendant again. This problem is compounded by the indication, in the
report, that a CBC test sample was collected from defendant at 8:37 a.m. --
five hours after his transfer to another hospital. In this confusing
situation, there is no way to establish that the blood tested was actually
defendant's blood without something in the nature of chain-of-custody
testimony.
 Defendant relies on People v Ethridge, 243 Ill. App. 3d 446, 610
N.E.2d 1305 (1993), in which the court found that there is no requirement
on the State to introduce the actual blood serum as part of the foundation
for admissibility of the blood test results. "Rather, the foundational
question presented is whether it was in fact defendant's blood that was
tested and produced the result sought to be admitted at trial. Provided
the State can show that it was defendant's blood that was used to determine
defendant's BAC, then such BAC test results may be introduced under Section
11-501.4 if the other criteria for admissibility set forth in that section
are met." People v Ethridge, 243 Ill. App. 3d at 464, 610 N.E.2d at 1316.
(Emphasis added.)
 The majority holds that Ethridge's requirement that the State show
defendant's blood was used for the test is only dicta. Therefore, since
the lab report says it is defendant's blood, that assertion should be
accepted without any foundational showing of accuracy because the business
record rule does not require it.
 One wonders how comforted the majority would be by such fine legal
distinctions if we were being convicted of DUI on the basis of tests
conducted on blood possibly drawn from someone else.
 Our responsibility is to determine, not whether it is possible that
defendant committed the crime, but rather whether the State has proven him
guilty beyond a reasonable doubt. I do not believe it has. I would
reverse the conviction and I, therefore, dissent.