(No. 74770.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BRIAN BEALS, Appellee.

*Opinion filed September 29, 1994.—Rehearing denied December 5, 1994.*

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Theodore Fotios Burtzos and Matthew L. Moodhe, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Greg Koster, Assistant Public Defender, of counsel), for appellee.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, the defendant, Brian Beals, was convicted of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(1)) and aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(1)). The defendant was sentenced to an 80-year extended term of imprisonment for the murder conviction, and a concurrent five-year term for aggravated battery. The appellate court reversed the defendant's convictions and remanded the cause for a new trial, finding that the defendant was deprived of the effective assistance of counsel at trial. (248 Ill. App. 3d 19.) We allowed the State's petition for leave to appeal. (134 Ill. 2d R. 315.) For the following reasons, we reverse the judgment of the appellate court.

## FACTS

The evidence at trial established that the six-year-old victim, Demetrius Campbell, received a fatal gunshot wound to his neck as he crossed 60th Street in Chicago on the afternoon of November 16, 1988. The victim's mother, Valerie Campbell, received a gunshot wound to

her thigh at the same time, but survived the attack. Shortly before the shooting, the victim was walking with his mother, his two brothers, and his mother's boyfriend, Derrick Lewis, near 60th Street and Normal Avenue in Chicago. The group encountered the defendant and Steven Johnson arguing on the sidewalk in front of the defendant's building. Apparently, the two men were involved in a territorial dispute over who should be allowed to sell illegal drugs in the neighborhood. Lewis remained with the two men, in an attempt to intervene in the argument. Lewis and Johnson then entered Johnson's blue IROC sports car and drove away.

The defendant returned briefly to his apartment and then got into his red car and drove west on 60th Street towards Valerie and her children. As Valerie and her sons crossed 60th Street, Valerie saw that the defendant was pointing a gun at them out of the driver's side window of his car. Valerie instructed her sons to run. As they ran away, the victim was shot in the neck and Valerie was shot in the thigh. Valerie picked up the victim and hid underneath the porch of a nearby house with her other sons. The defendant got out of his car and looked around for approximately two minutes, and then drove away.

Lewis and Johnson heard the gunshots and returned to the scene. Valerie described the shooter to them as the "fat, light-skinned guy" with whom Johnson had been arguing earlier. Lewis informed the investigating officers that the man with whom Johnson had argued earlier was named Brian Beals. Both Valerie and Antonio, one of her sons, told the investigating officers that the shooter was a very heavy, light-skinned man, between 5 feet 9 inches and 6 feet tall. They also told the officers that the shooter wore a red and white jacket and drove a red car.

The investigating officers went to the defendant's

home and discovered the defendant hiding in the basement under a sheet. Antonio, who accompanied the investigating officers to the defendant's home, identified the defendant at that time as the shooter. At trial, both Antonio and Valerie identified the defendant as the person who shot the victim and Valerie.

The defendant's theory at trial was that the victim and Valerie were shot by an unidentified gunman, who was attempting to shoot the defendant. In support of this theory, the defendant testified that, as he walked toward his car, he saw two men run toward him. The defendant could not describe the men, but noticed that one of them had a gun. The defendant entered his car and quickly drove away. He noticed, through his rear-view mirror, that one of the unidentified men was shooting at his car. The defendant claimed that he saw Valerie and her children walking as he drove west on 60th Street. The defendant drove to his friend's house and told the friend that someone had shot at him. The defendant then drove to his mother's home, where he was taken into custody.

In support of his theory that a third party was responsible for the shooting, the defendant offered the testimony of two friends, Sidney Cobb and Norman Yancy. Cobb testified that he was in the defendant's apartment shortly before the shooting. He testified that the defendant left the apartment to speak to Johnson and then returned for his red and white Adidas jacket. Cobb testified that the defendant then left again, but did not have a weapon. Cobb left the apartment five seconds later and saw the defendant drive off in a west-erly direction. Cobb also saw an individual fire shots at the defendant's moving car, and then run into an alley. Cobb testified that the shooter was 18 or 19 years old, approximately 6 feet 1 inch tall, and wore a blue jogging suit.

Yancy testified that he saw two men arguing across the street from his house. He later saw a man shooting a gun in a westerly direction. Yancy then saw a dark-blue or black sports car, possibly an IROC, back into the alley, pick up the shooter, and then drive west on 60th Street. He described the shooter as a light-skinned man, wearing a blue and black outfit. On cross-examination, Yancy denied that he had previously described the shooter as a 20- to 30-year-old man, 6 feet 5 inches tall and light-skinned. Both Cobb and Yancy testified that they told defendant's attorney what they saw, but did not notify the police or State's Attorney's office about the incident they observed until trial. In rebuttal, the State introduced two stipulations that it had entered with defense counsel. The parties first stipulated that Yancy told defense counsel during a meeting in defense counsel's office in April 1989, at which defendant's sister was present, that the driver of the car that picked up the shooter was light-skinned, thin, 20 to 30 years old and approximately 6 feet 5 inches tall. The State and defense counsel also stipulated that Cobb told defense counsel that the defendant wore his red and white Adidas jacket during his argument with Johnson. In surrebuttal, defendant testified that he did not wear the jacket during his argument with Johnson.

The appellate court held that the defendant was deprived of the effective assistance of counsel because defense counsel entered into the above-delineated stipulations relating to the prior inconsistent statements of Cobb and Yancy. (248 Ill. App. 3d at 24.) The appellate court found that defense counsel's stipulations impeached and destroyed the credibility of the only witnesses to corroborate the defendant's version of events, and therefore, were not a matter of trial strategy. (248 Ill. App. 3d at 24-25.) Accordingly, the appellate court reversed the defendant's convictions and remanded the cause for a new trial.

504

## ANALYSIS

### I. Ineffective Assistance of Counsel

It is well established that claims of ineffective assistance of counsel are analyzed according to the two-part standard set forth in the United States Supreme Court's decision in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and adopted by this court in *People v. Albanese* (1984), 104 Ill. 2d 504:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

The defendant here cannot satisfy either prong of the *Strickland* standard. Defense counsel was not incompetent in entering into the above-delineated stipulations concerning the prior inconsistent statements of Cobb and Yancy. On the contrary, counsel's decision to enter into the two stipulations was a matter of sound trial strategy. The testimony of Cobb and Yancy was important to the defense primarily because it corroborated the defendant's claim that an unidentified gunman fired shots at him as he drove past the victim and Valerie. Cobb and Yancy both testified that they saw a man wearing a blue or black outfit firing shots in a westerly direction on 60th Street at the approximate time that the victims were shot.

The disputed stipulations did not destroy or even undermine this testimony. The Cobb stipulation per-

tained to an insignificant matter, that is, whether the defendant was wearing his red and white Adidas jacket when he argued with Johnson or whether he retrieved the jacket when he returned to his apartment immediately before the shooting. The question of whether the defendant was wearing the Adidas jacket during his argument with Johnson was not essential to either the State's or the defendant's theory of the case.

The Yancy stipulation likewise did not pertain to Yancy's testimony that he saw a gunman dressed in a blue or black outfit shooting at the defendant's car. Rather, it related to Yancy's description of the driver of the getaway car that picked up the alleged gunman following the shooting. The appellate court erroneously found that the stipulation was damaging to the defense because Cobb's description of the driver fit the defendant's description. In fact, however, Cobb described the driver of the getaway car as *6 feet 5 inches tall*, 20 to 30 years old, light-skinned and *thin*. Defendant's arrest record, on the other hand, reveals that the defendant was 6 feet 2 inches tall and weighed 285 pounds.

In any event, defense counsel's decision to stipulate to Cobb's and Yancy's prior inconsistent statements was clearly a strategic move aimed at minimizing the prejudicial effect of those statements. Had counsel not entered into the disputed stipulations, the State could have introduced Cobb's and Yancy's prior statements in another manner. The record shows that the defendant's sister was present at the meeting where Yancy and Cobb made prior inconsistent statements to defense counsel, that she took notes of those statements, and that the prosecution had copies of her notes. Counsel's decision to stipulate to the prior inconsistent statements successfully prevented the State from calling the defendant's own sister as a witness against the defendant. In sum, the defendant has failed to overcome the "strong

presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.

In view of our disposition of the incompetence prong of the *Strickland* test, we are mindful of the fact that we need not address whether defendant suffered prejudice as a result of defense counsel's alleged deficiencies. (See *People v. Bean* (1990), 137 Ill. 2d 65, 131 ("reviewing court may dispose of claim by applying either component and, if it is not proved, need not consider the other component"), citing *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.) We note in passing, however, that defendant cannot satisfy the second prong of the *Strickland* standard, that is, that he was prejudiced by counsel's decision to enter into the stipulations. Here, there is no reasonable probability that the defendant would have been acquitted had defense counsel not entered into the disputed stipulations. The State's evidence against the defendant was overwhelming. Defendant was identified by two eyewitnesses: Valerie and Antonio. These eyewitnesses had the opportunity to see the defendant on three separate occasions: first, when they walked past him as he argued with Johnson on the sidewalk; second, when the defendant stopped his car in the middle of 60th Street, approximately 25 feet from the witnesses, and commenced firing his gun; and finally, when the defendant exited his car after the shooting and attempted to search for the victims. Minutes after the shooting occurred, both Valerie and Antonio told Johnson and Lewis that the shooter was the "fat, light-skinned guy" with whom Johnson had argued. Valerie also described the shooter to investigating officers as a tall, fat man who was wearing a red and white jacket. The record also reveals that, immediately following the defendant's arrest, Antonio identified defendant as the shooter. Finally, both eyewitnesses

identified the defendant in court as the shooter. The fact that the defendant was eventually found hiding in the basement of his mother's home underneath a sheet is also evidence of flight following commission of the offense.

By contrast, the evidence offered by the defense was weak at best. The defendant's theory was that the victim was mistakenly shot by someone attempting to shoot the defendant. The defendant offered his own testimony and the testimony of Cobb and Yancy in support of this theory. The State seriously undermined the credibility of the defendant's witnesses, however, by pointing out that neither witness told the police or the State's Attorney's office about the unidentified gunman until trial. The State also pointed out that both Cobb and Yancy were the defendant's longtime friends. The jury had the opportunity to evaluate the testimony of all of the witnesses, and apparently found that the State's witnesses were more credible. It cannot be said that "but for" defense counsel's stipulations, the outcome of the defendant's trial would have been different.

We next address the appellate court's conclusion that defense counsel was incompetent because he failed to object to prior consistent statements bolstering the testimony of prosecution witnesses. (248 Ill. App. 3d at 26.) Three prosecution witnesses testified at trial that, immediately after the shooting, Valerie stated she was shot by the "fat guy." The appellate court concluded that this testimony was inadmissible and that defense counsel's failure to object to the testimony deprived the defendant of the effective assistance of counsel.

The appellate court's ruling was clearly erroneous. The general rule is that a witness may not testify regarding an out-of-court statement made by the witness or a third person which corroborates the witness' or third person's testimony at trial. This general rule,

however, does not apply to statements of identification. (See *People v. Shum* (1987), 117 Ill. 2d 317, 342-43; *People v. Rogers* (1980), 81 Ill. 2d 571, 578-79; Ill. Rev. Stat. 1987, ch. 38, par. 115—12.) If a witness testifies that he previously identified an offender and the witness' veracity has been tested on cross-examination, a third person may then testify that he heard or saw the witness previously identify the offender. The third person's corroborative testimony is considered reliable, and therefore admissible, because both the witness and the third person are subject to cross-examination at trial. (*Rogers*, 81 Ill. 2d at 579.) Evidence of an out-of-court identification made by a witness, and a third person's testimony attesting to the fact that the witness made a previous identification, may be used both to corroborate an in-court identification (*Rogers*, 81 Ill. 2d at 579), and also as substantive evidence (see Ill. Rev. Stat. 1987, ch. 38, par. 115—12; *People v. Davis* (1985), 137 Ill. App. 3d 769, 771). In view of these principles, it is readily apparent that the testimony of Lewis, Johnson and the investigating officer was admissible. Therefore, defense counsel was not incompetent in failing to object to this testimony.

In sum, we find that the defendant was not deprived of the effective assistance of counsel. Accordingly, we reverse the appellate court's judgment and affirm the defendant's convictions for murder and aggravated battery.

## II. Sentencing

As stated, the trial court sentenced the defendant to an 80-year extended term for the murder conviction. The defendant alleges that he was deprived of a fair sentencing hearing because the trial court considered an improper aggravating factor in imposing the extended-term murder sentence. The record reveals that, prior to sentencing the defendant, the trial court stated:

"In aggravation the first guideline indicated in the statute is 'whether the conduct of the defendant caused or threatened serious harm.' Well, we all know that your conduct caused the ultimate harm. It caused the loss of a human life."

The defendant argues that the trial court improperly relied upon the victim's death as an aggravating factor warranting an extended-term sentence, when the death of the victim was implicit in the murder offense itself. The defendant relies upon the reasoning expressed in *People v. Saldivar* (1986), 113 Ill. 2d 256, to support his argument. In *Saldivar*, this court held that it is improper for a court imposing a sentence for voluntary manslaughter to rely upon the end result of the defendant's conduct, *i.e.*, the death of the victim, because that factor is implicit in the offense of voluntary manslaughter itself. *Saldivar*, 113 Ill. 2d at 272; see also *People v. Conover* (1981), 84 Ill. 2d 400; *People v. Brownell* (1980), 79 Ill. 2d 508.

The trial court never indicated, however, that it "considered" the victim's death as an aggravating factor justifying an extended-term sentence. Rather, the record suggests that the trial court statement was simply a general passing comment based upon the consequences of the defendant's actions.

Even assuming *arguendo* that the trial court's comment may be construed in the manner that the defendant suggests, we nevertheless conclude that the defendant's sentence should be affirmed. A trial court's reliance upon an improper factor does not always necessitate remandment for resentencing. (*People v. Bourke* (1983), 96 Ill. 2d 327.) A cause must be remanded for resentencing only where the reviewing court is unable to determine the weight given to an improperly considered factor. (*Bourke*, 96 Ill. 2d at 332, quoting *Conover*, 84 Ill. 2d at 405.) Where it can be determined from the record that the weight placed upon the

improperly considered aggravating factor was insignificant and that it did not lead to a greater sentence, remandment is not required. *People v. Reid* (1983), 94 Ill. 2d 88, 91.

Here, it is evident from the record that the trial court placed little, if any, weight upon the fact that the defendant's conduct caused the ultimate harm. Although the trial court observed that the defendant's conduct caused the victim's death, the record clearly reveals that the court relied upon other aggravating factors in sentencing the defendant. The trial court properly considered the victim's young age as the most significant factor warranting an extended term. The trial court also noted that it considered the fact that the offense was drug related, the need to punish and deter the defendant, as well as the need to protect society from the defendant as factors supporting an extended term. Upon our review of the record, we conclude that any weight that the trial court placed on the fact that the defendant's conduct caused the ultimate harm was insignificant, and did not result in a greater sentence. (*Bourke*, 96 Ill. 2d at 332; *People v. White* (1986), 114 Ill. 2d 61, 67-68.) Accordingly, we reject the defendant's argument that we must remand this cause for resentencing.

The defendant also contends that the trial court erred when it stated that the sentencing range in this case extended from a minimum of 20 years to a maximum of natural life. He claims that he was not eligible for a natural life sentence, because a natural life sentence is available only under specific circumstances not present in the instant case. Ill. Rev. Stat. 1987, ch. 38, pars. 1005—8—1(a)(1)(b), 9—1(b).

As the State points out, the defendant waived this issue by failing to object at trial and to include this issue in his post-trial motion. (*People v. Enoch* (1988),

122 Ill. 2d 176.) We decline the defendant's request that we consider the alleged error under the plain error rule. (134 Ill. 2d R. 615.) The plain error rule is a limited exception to the waiver rule and may be invoked only if the evidence is closely balanced, or where the alleged error is so fundamental that it may have deprived the defendant of a fair sentencing hearing. (*People v. Herrett* (1990), 137 Ill. 2d 195.) Neither test is met in the instant case. The evidence presented at the defendant's sentencing hearing was not closely balanced. Moreover, the alleged error was not so egregious as to have deprived the defendant of a fair sentencing hearing. Therefore, we decline to consider the alleged error under the plain error rule.

As a final matter, the defendant contends that this cause should be remanded to the appellate court to consider whether his sentence was excessive. Where trial errors were raised but not decided in the appellate court, it is ordinarily appropriate to remand the cause to the appellate court for consideration of those errors. (*People v. Illgen* (1991), 145 Ill. 2d 353, 378; *People v. Janis* (1990), 139 Ill. 2d 300, 320.) However, in the interest of judicial economy, this court may consider an alleged error where the parties have fully briefed the question and the law on the issue is well settled. *People v. Wilson* (1991), 143 Ill. 2d 236, 249.

The defendant contends that his sentence was excessive in view of the fact that he had no prior convictions and was a fourth-year college student at the time of the crime. The defendant also suggests that the offense was simply the isolated act of an overwhelmed 22-year-old man who lacked sufficient self-control over his emotions.

It is well established that the trial court's judgment as to the appropriate punishment is entitled to great deference. (*Illgen*, 145 Ill. 2d at 379; *People v. Godinez*

(1982), 91 Ill. 2d 47, 55.) A sentence may not be altered absent a showing that the punishment imposed constitutes an abuse of discretion. (*People v. Hicks* (1984), 101 Ill. 2d 366, 375.) A court may find a defendant eligible for an extended term under the Unified Code of Corrections if the defendant is convicted of a felony committed against a person under 12 years of age at the time of the offense. (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—5—3.2(b)(4)(i), 1005—8—2(a).) The Code also provides that an extended term for first degree murder shall be not less than 60 years and not more than 100 years. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(a)(1).) The record here reflects that the trial court considered aggravating and mitigating factors before imposing sentence. The aggravating evidence included the fact that this senseless act of violence was committed against an innocent six-year-old victim during the middle of the day, and that the incident was related to the sale of drugs. After considering both aggravating and mitigating factors, we do not find that the trial court abused its discretion in imposing an 80-year term of imprisonment.

For the reasons stated, we find that no reversible error occurred in the defendant's trial. Accordingly, we reverse the appellate court's judgment and affirm the judgment of the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*