2020 IL App (1st) 180548-U
Order filed: August 28, 2020

FIRST DISTRICT
FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 21034 |
| | ) | |
| MICHAEL BROCK, | ) | Honorable |
| | ) | Carl B. Boyd, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Hoffman and Justice Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirmed defendant's conviction of first degree murder and his 60-year sentence, finding no reversible error in the State's redirect examination of a police officer or in its closing arguments and no plain error during sentencing.

¶ 2    A jury convicted defendant, Michael Brock, of first degree murder and found that he had personally discharged a firearm that proximately caused the death of the victim. The court sentenced defendant to 35 years' imprisonment for the murder and an additional 25 years' imprisonment for the firearm enhancement, for a total of 60 years' imprisonment. On appeal,

defendant contends that: (1) the prosecutor improperly attempted to repeatedly elicit inadmissible hearsay statements of non-testifying witnesses even after defense objections had been sustained; (2) the prosecutor made improper remarks during closing arguments; and (3) the trial court erred by expressly relying on a factor inherent in the offense of first degree murder when sentencing him. We affirm[1].

¶ 3        At trial, Brittany Reynolds testified that on November 19, 2011, she went to a bar in Harvey, Illinois, where she met up with her brother, Andre, her sister, Tenisha, and her friends Rachel, Patrice, Dante and Dwayne. At the bar, defendant asked her to dance, but she said no. At about 3 a.m., the bar closed and they all began walking toward their cars. Tenisha realized she had lost her cell phone, so Andre, Patrice and Dwayne returned to the bar to look for it.

¶ 4        Meanwhile, Brittany got in her car and drove to the front of the bar. Defendant and four other men approached her car. Defendant asked her what she was doing later that morning, and Brittany replied, "nothing," and proceeded to talk to a man nicknamed Limp. Defendant cursed at Brittany and she cursed back at him and told him to move away from her car. Brittany then drove to the other end of the block to check on Tenisha. As she was driving, Brittany heard two gunshots. She drove around the block, came back to the bar, and saw Andre on the ground in front of the bar, holding his stomach. Patrice was assisting him. Brittany contacted paramedics, who came to the scene and transported Andre to the hospital, where he died. On April 25, 2012, Brittany went to the police station, where she identified defendant out of a photo array as the person who had

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order stating with specificity why no substantial question is presented.

cursed at her while she was in her car prior to the shooting. On April 13, 2014, she picked defendant out of a lineup.

¶ 5    Dante Jones testified that after everyone left the bar around 3 a.m., he was walking his wife toward her car when he saw three or four men punching Andre. Dante went over and began pulling the men off Andre. Six more men joined the fight, and one of them punched Dante in the eye. Defendant then approached within one foot of Dante, pointed a silver gun at him, and threatened to kill him. Dante put his hands up. Defendant turned Dante around, put the gun to his head, and again threatened to kill him. Dante went down on his knees, got away from defendant, and went into the bar. About four or five seconds later, he heard a gunshot and people screaming, "He got shot." Dante then heard another gunshot. Dante went outside and saw Patrice attending to Andre. An ambulance arrived and Andre was taken to the hospital. On April 25, 2012, Dante identified defendant from a photo array as the person who had held the gun to him. On April 13, 2014, Dante picked defendant out of a lineup.

¶ 6    On cross-examination, Dante testified that he could not remember the type of gun that defendant had pointed at him.

¶ 7    Patrice Williams testified that after they all left the bar at 3 a.m., Tenisha misplaced her cell phone. Patrice returned to the bar to look for the phone, then went back outside. Several men were near Brittany's vehicle. Brittany told them to leave and then she drove away. A man began hitting Andre. More people joined in the fight, and Dwayne came over to help Andre. One of the men dragged Dwayne away, leaving Andre, who was now fighting with defendant and another man. Dante then came over and tried to pull the men off Andre. Defendant pointed a silver gun at the back of Dante's head. Dante went down to the ground on his knees and managed to get away from defendant and go inside the bar. Defendant then went over to Andre, pushed him against a

wall of the bar, and pointed his gun at him. Andre put up his hands. Defendant shot Andre one time. Andre slid to the ground as defendant ran into the backseat of an SUV, which drove away. Patrice heard a second gunshot but did not see who fired it.

¶ 8 Patrice went to Andre, opened up his shirt, and saw that he had been shot in the stomach. Patrice screamed for help, an ambulance arrived, and Andre was taken to the hospital. On April 25, 2012, Patrice went to the police station and identified defendant from a photo array as the shooter. On April 13, 2014, she picked defendant out of a lineup.

¶ 9 Charles Price testified that he left the bar at about 3 a.m. and was walking a woman toward her car when he saw a lot of people fighting in front of the bar. He heard two gunshots and ran away. He did not see the shooter or the person who was shot. He did not recall speaking to detectives about the shooting in May 2012, nor did he recall viewing a photo array in which he identified defendant as the shooter.

¶ 10 Officer Jeffery Crocker testified that when he arrived at the bar after the shooting, he located two spent shell casings, one on the sidewalk and one on the street in front of the bar. Officer Crocker spoke with Brittany, Patrice, Dante, and Charles. Brittany told him that the man who had cursed at her was wearing a tan and maroon coat, and that she heard three gunshots that night. Patrice told him that the person she had seen with the gun had short dreads and was wearing a grey hoodie with orange lettering, and that after the shooting three men fled into an SUV. However, Patrice did not tell Officer Crocker that she had witnessed the shooting. Dante told Officer Crocker that during the fight preceding the shooting, he had been struck in the face with an object, and that the gun that defendant had aimed at him was a revolver. Charles stated that he had seen a man with a firearm during the fight in front of the bar.

¶ 11    Officer Crocker testified that on April 25, 2012, Patrice viewed a photo array and identified defendant as the shooter. Brittany and Dante also viewed photo arrays, with Brittany identifying defendant as the person who had cursed at her, and Dante identifying defendant as the person who pointed the gun at him. On May 18, 2012, Charles was shown a photo array and he identified defendant as the man he had seen with the gun. Sergeant Shane Gordon testified that Charles was shown a photo array on May 18, 2012, and identified defendant as the shooter. Defendant was arrested on April 11, 2014.

¶ 12    Earl Williamson testified that on November 19, 2011, he was at a house with defendant, Limp, and two other men. Sometime between 11 p.m. and 12 a.m., Earl's companions left to go to the bar. Defendant and Limp each had a gun which they took with them. Defendant's gun was black. The next morning, defendant called Earl and told him that he had gotten into a fight at the bar and had killed someone.

¶ 13    Earl had prior convictions for aggravated unlawful use of a weapon (AUUW) by a felon and aggravated robbery. At the time of trial, he was also in jail for pending charges of armed habitual criminal, residential burglary, and AUUW by a felon. In exchange for his truthful testimony against defendant, Earl agreed to plead guilty to AUUW by a felon and receive a five-year sentence.

¶ 14    The parties stipulated that if called to testify, Dr. Danielo Perez would testify that he performed the autopsy on Andre and concluded that the cause of death was a gunshot wound to the abdomen and that the manner of death was homicide.

¶ 15    Following defendant's conviction, the sentencing hearing was held. In aggravation, Sergeant Matthew Gainer testified to defendant's involvement in a 2010 shooting. The State also presented evidence of defendant's 2009 conviction for AUUW and his 2010 conviction for

possession of a controlled substance. Defendant was on probation at the time of the 2010 and 2011 shootings. In mitigation, defendant pointed to his employment and educational history and his family support.

¶ 16     The trial court sentenced defendant to 60 years' imprisonment, stating:

"I have heard the evidence and arguments ***. I have heard from Master Sergeant Matthew Gainer in the case as well. There are certain factors in mitigation that I have taken into account, and the only factor that I could find in mitigation [is] that this young man does come from a very strong background, where he did drop out of the eleventh grade, and I am glad to hear he did have an opportunity [to] complete his GED.

But I also have to consider factors in aggravation, and in aggravation I consider the fact that the defendant's conduct caused death and serious harm. I look at the defendant's history of prior delinquent and criminal activity. That *** definitely includes the *** 2009 aggravated UUW, and I consider the fact that the defendant was on parole or probation, mandatory supervised release at the time he committed this offense. I believe that the sentence that I am going to impose is necessary to deter others from committing the same crime."

¶ 17     On appeal, defendant first contends that the prosecutor committed "misconduct" during the redirect examination of Detective Crocker. By way of background, defendant had cross-examined Detective Crocker as to whether he had interviewed Quira Brown, Dwyane Shirley, Shkenya Hall, Curtis Anthony, Tenisha Gordon, and Kimberly Bryant (the non-testifying witnesses) and shown them a photo array. Detective Crocker responded affirmatively. The prosecutor objected on hearsay grounds. The trial court overruled the objection, ruling that the testimony was not hearsay because the detective did not testify to the substance of his conversations with the non-testifying

witnesses or identify who the witnesses had picked out of the photo array. The prosecutor asked the trial court whether he could question Detective Crocker on redirect examination about whether the non-testifying witnesses had identified anyone in the photo array. The court said no.

¶ 18    On the State's redirect examination of Detective Crocker, the following colloquy occurred:

"Q. In the course of your investigation you spoke to, as counsel stated, an Anthony Curtis; is that correct?

A. Yes

Q. And you learned in the course of your investigation that Anthony Curtis only heard the gunshot, he didn't see the shooter?

[Defense objection sustained.]

Q. Officer, you stated as counsel indicated that you interviewed Dwayne Shirley, Kimberly Bryant, Quira Brown, Shkenya Hall, Anthony Curtis, and Tenisha Gordon; is that correct?

A. Yes.

Q. And you indicated that you did photo lineups with [those witnesses]; is that correct?

A. Yes.

Q. And through the course of your investigation did you learn that Dwayne Shirley, Kimberly Bryant, Quira Brown, Shkenya Hall, Anthony Curtis, [and] Tenisha Gordon were not able to see the face of the shooter?

[Defense objection sustained.]

Q. There is no identification?

[Defense objection sustained.]

Q. The people that you did do the lineups with were—the other three were Patrice Williams, Dante Jones, and Brittany Reynolds; is that correct?

A. Yes.

Q. And they were able to tell you they were able to see the face of the defendant; is that correct?

A. Yes.

Q. And all three made positive IDs in a photo lineup and a lineup; is that correct?

A. Yes.

Q. And those are the three witnesses who saw the face of the defendant?

[Objection sustained.]"

¶ 19    Defendant argues that it was error for the prosecutor to attempt to elicit hearsay testimony by questioning Detective Crocker during redirect examination about the substance of his conversations with the non-testifying witnesses and about whether they indicated when viewing the photo array that they had not seen the shooter's face.

¶ 20    Generally, where, as here, defense counsel timely objects at trial to improper interrogation, the court can correct the error by sustaining the objection or instructing the jury to disregard the answer. *People v. Carlson*, 79 Ill. 2d 564, 577 (1980). Defendant argues, though, that the State committed reversible error when it defied the trial court's rulings by repeating the same line of questioning even after the court had sustained his objections. Defendant argues that "the State's improper questions to Detective Crocker bolstered the credibility of Brittany, Dante, and Patrice's identification of [him] as the shooter."

¶ 21   We disagree. The questions asked by the State during its redirect examination of Detective Crocker indicated only that the non-testifying witnesses had not seen the shooter's face, and thus that they had no relevant information regarding defendant's guilt or innocence. The non-testifying witnesses' inability to see the shooter's face has absolutely no bearing on the relative strength or weakness of the identifications made by the testifying witnesses. Therefore, any error was harmless as the State's redirect examination of Detective Crocker did not contribute to his conviction. See *People v. Beker*, 239 Ill. 2d 215, 240 (2010) (when deciding whether error is harmless, the reviewing court may focus on the error to determine whether it might have contributed to the conviction). A harmless error analysis may also focus on whether the properly admitted evidence overwhelmingly supports the conviction. *Id.* Here, the evidence overwhelmingly supported the conviction, as Brittany identified defendant as the person who engaged in a verbal altercation with her just prior to the shooting; Dante identified defendant as the person who held a gun to his head; Patrice identified defendant as the person who held the gun to Dante's head and shot Andre; Sergeant Gordon testified that Charles identified defendant as the shooter; and Earl testified that defendant admitted to the shooting. Given all this evidence against defendant, any error by the State in its questioning of Detective Crocker on redirect examination was also harmless.

¶ 22   Next, defendant contends that the prosecutor made improper remarks during closing argument that deprived him of a fair trial. A prosecutor is allowed wide latitude during closing arguments, and may comment on the evidence presented at trial, as well as any fair, reasonable inferences therefrom. *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005); *People v. Cook*, 2018 IL App (1st) 142134, ¶ 61. On review, we consider the challenged remarks in the context of the record as a whole, in particular the closing arguments of both sides. *People v. Williams*, 313 Ill. App. 3d 849, 863 (2000). Reversal is warranted only if the prosecutor's improper remarks substantially

prejudiced defendant, that is, if they constituted a material factor in his conviction. *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007).

¶ 23    Initially, we note that it is unclear whether the proper standard of review for alleged prosecutorial misconduct in closing arguments is *de novo* or abuse of discretion. *People v. Phillips*, 392 Ill. App. 3d 243, 274-75 (2009). We need not resolve this issue because the outcome here is the same under either standard.

¶ 24    First, defendant argues that he was prejudiced when the State commented during its rebuttal closing argument:

> "Do you think if one of those six witnesses who weren't called *** as witnesses, if they had seen the shooting and they had gone and not ID'd the defendant when they saw the shooting *** If there was a witness who didn't ID the defendant and said they saw him, they would have been here to testify."

¶ 25    The State's comment lacks clarity. To the extent that the State was arguing that the six non-testifying witnesses did not identify defendant, it merely reiterated what defendant had himself stated in his closing arguments. Defendant had argued that Brittany, Dante, and Patrice (who testified at trial) were "the three witnesses that actually were present for this," meaning that the six non-testifying witnesses did not witness the shooting and could not identify defendant. Accordingly, we find no prejudicial error. See *People v. Vasquez*, 118 Ill. App. 2d 66, 75 (1969) (prosecutor's rebuttal argument was not prejudicial where it reiterated defendant's comments during his closing argument). Further, any error was cured where the trial court sustained objections to the prosecutor's comment. *Carlson*, 79 Ill. 2d at 577.

¶ 26    Next, defendant contends that the prosecutor denied him a fair trial and shifted the burden of proof during rebuttal arguments by repeatedly stating that the defense theory was that the State

and its witnesses were involved in a "big conspiracy" against him, which makes him "the most unluckiest person in the world." Defendant forfeited review by failing to object at trial. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988).

¶ 27   On the merits, the prosecutor's rebuttal argument was invited by defendant's closing argument. During his closing argument, defendant attacked the reliability of the State's witnesses and the conduct of the police investigation, and stated that "Sergeant Gordon *** a higher-ranking police official *** worked really hard to establish the reliability of the guy (Charles Price) that said he didn't see anything, he couldn't remember, he couldn't be of help." Defendant also criticized Officer Crocker for telling the jury "the exact same thing" regarding Charles's identification, which "would be really funny *** if this wasn't a murder trial." Defendant thereby implied that the officers, along with the other State's witnesses, were conspiring to pin the murder on him, and he invited the prosecutor's response characterizing the defense argument as being based on a conspiracy theory. We find no reversible error. See *People v. Glasper*, 234 Ill. 2d 173, 204 (2009) (statements made during the prosecutor's rebuttal argument are not improper where they were provoked or invited by defendant's argument); *People v. Temple*, 2014 IL App (1st) 111653, ¶ 74 (State's rebuttal argument about a defense allegation of a conspiracy was an invited response to the defendant's attack on the credibility of the State's witnesses and was not a misstatement of law or an attempt to distort the burden of proof).

¶ 28   Next, defendant contends that the prosecutor denied him a fair trial by arguing:

"You learned that [Andre] was a 19-year-old at the prime of his life. He was working full-time while going to school at South Suburban College. You heard that he was a young man with a bright future. *** On [November 19, 2011], because of this defendant's actions, Andre Reynolds was no longer a promising college student with a bright future."

¶ 29    Defendant forfeited review by failing to object at trial. *Enoch*, 122 Ill. 2d at 186. On the merits, defendant argues that the prosecutor's comments were similar to those found to be erroneous in *People v. Spreitzer*, 123 Ill. 2d 1, 38 (1988). In *Spreitzer*, the prosecutor asked the jury to "[t]hink of it. You, any of us walking down a street, being grabbed by one, two or three individuals like this man, who have one intent, to kill somebody, to kill you." *Id.* at 37. The prosecutor also invited the jury to " [p]lace yourself in the shoes of" the victims and think about " [w]hat went through their minds when they were shot, stabbed, mutilated, handcuffed." *Id.* at 38. We held that these remarks improperly invited the jury to enter into "some sort of empathetic identification with the victims." *Id.*

¶ 30    The remarks at issue are unlike those in *Spreitzer*, as they were based on Brittany's testimony and merely gave a brief description of Andre's promise as a young college student and did not invite the jurors to put themselves in his shoes at the time of the shooting or empathetically identify with him. We find no reversible error.

¶ 31    Defendant also contends that the prosecutor denied him a fair trial by arguing:

> "You heard that [Andre] was Brittany's little brother, her rock, someone that she could always count on, was helping her in every possible way with her children, moving into her apartment. He was an honorable young man. *** On [November 19, 2011], *** [h]e was no longer Dante's good friend, a doting uncle, Brittany's rock."

¶ 32    Defendant forfeited review by failing to object at trial. *Enoch*, 122 Ill. 2d at 186. On the merits, defendant contends that the prosecutor's remarks run afoul of *People v. Wilson*, 51 Ill. 2d 302, 306 (1972), which held that "argument by the prosecutor which dwells upon the decedent's family, or seeks to relate a defendant's punishment to the existence of his family, is inflammatory and improper."

¶ 33    The brief remarks at issue here were based on Brittany's testimony and did not "dwell" on the decedent's family; we find no reversible error.

¶ 34    Finally, defendant contends that the trial court erred when it expressly relied on factors inherent in the offense of first degree murder when sentencing him, specifically, "the fact that the defendant's conduct caused death and serious harm." The State responds that defendant forfeited review by failing to object at trial. *Enoch*, 122 Ill. 2d at 186. However, the error impinges on defendant's right not to be sentenced based on an improper factor and affects his fundamental right to liberty and is therefore reviewable under the second prong of the plain error rule. *People v. Sanders*, 2016 IL App (3d) 130511, ¶ 17.

¶ 35    A sentencing court may consider the nature and extent of each element of the offense as committed by defendant, but it may not rely on a factor implicit in the offense as an aggravating factor in sentencing. *Id.* ¶ 13. Such dual use of a single factor is often referred to as double enhancement. *People v. Guevara*, 216 Ill. 2d 533, 545 (2005).

¶ 36    We review *de novo* the question of whether the trial court relied on an improper factor in imposing a sentence. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8. The cause must be remanded for resentencing when we are unable to determine the weight that the trial court gave to an improper factor. *Sanders*, 2016 IL App (3d) 130511, ¶ 13. Remand is unnecessary when we can determine from the record that the trial court placed insignificant weight upon the improper aggravating factor. *Id.*

¶ 37    *People v. Brewer*, 2013 IL App (1st) 072821, and *People v. Beals*, 162 Ill. 2d 497 (1994), are dispositive here. In *Brewer*, the defendant argued that the trial court erred during sentencing when it stated, "Factors in aggravation, the defendant's conduct did cause or threaten serious harm, the ultimate serious harm, murder." *Id.* ¶ 56. Defendant contended that the trial court thereby

improperly emphasized a factor inherent in the offense of first degree murder, specifically, serious harm and death. *Id.* ¶ 54.

¶ 38    We held:

>    "The record does not indicate the trial court emphasized a factor inherent in the offense during sentencing. Contrary to [defendant's] assertions, the fact his conduct threatened or caused serious harm is not a factor inherent in the crime itself but is a proper aggravating factor to be considered during sentencing even in cases where serious bodily harm is implicit in the offense." *Id.* ¶ 57 (citing *People v. Saldivar*, 113 Ill. 2d 256, 269 (1986), *People v. Solano*, 221 Ill. App. 3d 272, 274 (1991), and *People v. Spencer*, 229 Ill. App. 3d 1098, 1102 (1992)).

¶ 39    We found no abuse of discretion where defendant's sentence was within the statutory range for first degree murder. *Id.*

¶ 40    In *Beals*, the defendant argued that after his conviction of first degree murder, he was deprived of a fair sentencing hearing when the trial court stated:

>    "In aggravation the first guideline indicated in the statute is 'whether the conduct of the defendant caused or threatened serious harm.' Well, we all know that your conduct caused the ultimate harm. It caused the loss of a human life." *Beals*, 162 Ill. 2d at 508-09.

¶ 41    The defendant argued that the trial court had improperly relied on the victim's death as an aggravating factor, when the death of the victim was implicit in the offense of murder. *Id.* at 509. Our supreme court disagreed, holding that the trial court had never considered the victim's death as an aggravating factor; rather, "the record suggests that the trial court statement was simply a general passing comment based upon the consequences of the defendant's actions." *Id.* The supreme court further noted that even if "the trial court's comment may be construed in the manner

that the defendant suggests," it would still affirm his sentence because the record indicated that the trial court had placed little weight on the fact that his conduct caused the victim's death and had instead relied on other aggravating factors. *Id.* at 510. Specifically, when sentencing defendant, the trial court had relied on the victim's young age, the fact that the offense was drug related, the need to punish and deter him, and the need to protect society. *Id.* Accordingly, the supreme court rejected the defendant's argument that the cause should be remanded for resentencing. *Id.*

¶ 42    Similar to *Brewer* and *Beals*, the trial court's reference here to Andre's death was an isolated, passing comment made in the context of talking about how defendant's conduct caused serious harm. When read in its totality, the record indicates that the trial court was merely considering the degree of harm caused by defendant's conduct, which is an aggravating factor that the trial court may consider during sentencing. *Saldivar*, 113 Ill. 2d at 269. The court made no further mention of Andre's death outside of the single comment made during the discussion of the degree of harm and instead considered other proper aggravating factors, including defendant's criminal record, that he was on probation at the time of the offense, and the need to deter others from committing the same crime. The court's sentence was within the applicable sentencing range. We find no plain error.

¶ 43    Affirmed.