**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200452-U

Order filed November 29, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0452 Circuit No. 18-CF-794 |
| | ) | |
| JOSEPH R. LAGESSE, | ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HAUPTMAN delivered the judgment of the court.
Justices Holdridge and Hettel concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The court did not consider an improper factor in aggravation. Defendant's sentence is not excessive.

¶ 2    Defendant, Joseph R. Lagesse, appeals his sentence for drug-induced homicide. Defendant argues that the trial court erred by improperly considering, as an aggravating factor, that his conduct caused a death because death is inherent in the offense of drug-induced homicide. He further argues that his sentence is excessive. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    The State charged defendant with drug-induced homicide (720 ILCS 5/9-3.3 (West 2018)), alleging that he delivered heroin and fentanyl to Matthew Whitlock and Whitlock died as a result of consuming the heroin and fentanyl.

¶ 5    At the jury trial, evidence established that on November 19, 2018, defendant suffered an apparent overdose and was unresponsive when paramedics arrived at his residence. The paramedics administered Narcan, which is used to treat opioid overdoses, and defendant regained consciousness. Defendant was taken to the hospital where he told a nurse that he had taken his usual dose of heroin. That same day, after being released from the hospital, defendant sold Whitlock what Whitlock believed to be heroin, and Whitlock overdosed after injecting it. Whitlock died several days later. Tests of Whitlock's blood revealed the presence of a heroin metabolite and fentanyl. On November 27, 2018, defendant sold a police informant suspected heroin. Tests revealed it was heroin and fentanyl. Defendant was found guilty.

¶ 6    Defendant's presentence investigation report (PSI) indicated that defendant had convictions for two felonies—aggravated battery and unlawful possession of a controlled substance—and three misdemeanors—possession of drug paraphernalia, battery, and unlawful possession of drug paraphernalia. He also had a juvenile adjudication for criminal sexual abuse. The PSI also stated three of defendant's sisters were deceased. One sister drowned as a child and another sister starved herself. Defendant only reported in the PSI that his third sister was killed. Defendant's mother, Sarah Wilken, later testified that she was beaten to death. The PSI noted that defendant reported he was sexually and physically abused. At the time the PSI was prepared, defendant was 43 years old and reported that he began using heroin at the age of 22. He was sober from 2015 to 2017 but had relapsed and was using heroin five times a day until December

2

2018. Defendant reported that he started using crack cocaine at the age of 16 and used five times a week.

¶ 7        At the sentencing hearing, Whitlock's mother and aunt read victim impact statements detailing the negative impact his death had on them and their children. The State called the county coroner to testify as to the heroin epidemic. Wilken testified on defendant's behalf that defendant was a kindhearted person and she supported him. She was very close with defendant, and he would do anything for her. Wilken testified that defendant helped her move heavy objects, cleaned the house, and cared for her. Wilken moved five or six hours away from defendant in 2015 and defendant was not assisting with her care prior to his incarceration. Wilken never knew defendant to sell or use drugs.

¶ 8        Defendant made a statement in allocution. He said that he was "sorry whatever happened." Defendant added that he had been an addict for years and it destroyed his life. Finally, he stated that "Drugs only get you two places: Dead or prison."

¶ 9        Defendant faced a sentence of 6 to 30 years' imprisonment, and the State argued for 30 years' imprisonment. The State highlighted that in all likelihood, defendant sold the same drugs on which he overdosed to Whitlock on the same day defendant overdosed. It also said the case called for a sentence that would deter others.

¶ 10       Defense counsel argued for a sentence of 10 years' imprisonment. He argued that defendant was an addict trying to find his "next fix," not a major drug dealer. Counsel emphasized that defendant's criminal history was not extensive and he had never been to prison.

¶ 11       In its ruling, the court noted that, as defendant stated in allocution and the State repeated, the theme of the case and of heroin and fentanyl use, is death and prison. The court stated that defendant was a heavy drug user and had used heroin for half of his life. The evidence was that

3

on the day Whitlock lost his life, defendant nearly lost his life with a drug overdose. The court noted the testimony from the coroner regarding the number of overdoses in the county, which spoke to the need to deter others from the delivery and use of heroin, and that people needed to know there were consequences "to living in this world in which you use heroin, and then you sell heroin to be able to supply yourself with another dose of heroin; that this life does involve either going to prison or dying." The court then spoke about defendant's family situation growing up, noting his sisters' deaths and his abuse. It was not surprised that defendant abused drugs, but stated his family and life circumstances did not excuse his choices. The court stated a heroin addiction was a "crazy way to live" and that there were efforts being made to provide treatment. It then noted defendant's history with the court system, which it stated were opportunities for him to tell someone he had a drug problem and seek help. However, rather than seek help, defendant was willingly out of control.

¶ 12     The court made various comments about defendant being a drug addict and noted that the case was not just about defendant and his drug addiction. It continued

> "The crux of this case is that somebody else's life was lost, and that they are gone forever. And that's what makes a homicide the worst case, and the most serious crime in criminal law. It's when a life is taken, they're gone. And it has an impact on a family for generations, and you can hear that in the victim's impact statements, which to one extent or another, the mother and the aunt of [Whitlock] are going to be describing this to, in a way, that it's going to reach for generations in their family; the fact that—that [Whitlock] died this way.
>
> And it, certainly, is aggravating that you—and as I'm going through here and talking about all the circumstances, I mean, some of these circumstances

4

seem to be somewhat mitigatory. You know, you don't have the worst criminal history, but some of them tend to be aggravating. You have—from the facts of this case—that you could have an *** overdose at 3:00, or whatever time it was, and you're selling drugs later the same day. The same drugs; I'm sure the same drugs that nearly took your life. You didn't care at that point. I need to sell more drugs, so I can have more drugs to shoot into my veins, even though it almost took my life. Well, you know what, if somebody else dies, it happens."

The court noted that defendant

"didn't intend to kill anyone, but the essence of drug-induced homicide is really that you—you were wildly disregardful of the risk to somebody else's life. You knew that you had a dangerous drug; not just heroin. There was something else in there. You OD'd. *** [B]ut I'm going to sell it 'cause doggone it, I want my next dose. I got to make some money, and a week later or whatever it was from the evidence, short time later, you're still selling that drug."

It reiterated the need to deter others and "emphasize how dangerous this activity is." After looking at all the factors in mitigation and aggravation, as well as the circumstances, the court sentenced defendant to 18 years' imprisonment.

¶ 13    Defense counsel filed a motion for reconsideration stating defendant's sentence was excessive and unconstitutional. The court denied the motion. Defendant appealed.

¶ 14                                II. ANALYSIS

¶ 15                          A. Improper Aggravating Factor

¶ 16    Defendant argues that the court improperly considered a factor inherent in the offense of drug-induced homicide—Whitlock's death—as an aggravating factor in sentencing him. He

5

points to the comments by the court that the theme of the case was death and prison, that the crux of the case was a life was lost and while defendant did not intend to kill anyone, the essence of drug-induced homicide was that he disregarded the risk to a life.

¶ 17    Initially, we note that defendant forfeited this argument by not raising it below. See *People v. Estrada*, 394 Ill. App. 3d 611, 626 (2009) ("It is axiomatic that arguments may not be raised for the first time on appeal."). However, it is reviewable under the second prong of the plain error doctrine. See *People v. Mitok*, 2018 IL App (3d) 160743, ¶ 12 (recognizing our court has found second-prong plain error where the circuit court considered a factor inherent in the offense as an aggravating factor). The first step in applying the plain error doctrine is to determine if an error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 18    "Generally, a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense." *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). "Such dual use of a single factor is often referred to as a 'double enhancement.' " *Id.* at 12 (quoting *People v. Gonzalez*, 151 Ill. 2d 79, 85 (1992)). "This rule is not meant to apply rigidly because public policy dictates that a sentence be varied in accordance with the circumstances of the offense." *People v. Sanders*, 2016 IL App (3d) 130511, ¶ 13. As such, the ' " ' "nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant' " ' " may be considered in sentencing a defendant. *People v. Saldivar*, 113 Ill. 2d 256, 268-69 (1986) (quoting *People v. Hunter*, 101 Ill. App. 3d 692, 694 (1981), quoting *People v. Tolliver*, 98 Ill. App. 3d 116, 117-18 (1981)). In determining whether the court based the sentence on an improper factor, "a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). When a court has considered

6

an improper factor "[r]emand is unnecessary where a reviewing court can determine from the record that the trial court placed insignificant weight upon the improper aggravating factor." *Sanders*, 2016 IL App (3d) 130511, ¶ 13.

¶ 19    The supreme court's decision in *People v. Beals*, 162 Ill. 2d 497 (1994) is instructive. In *Beals*, the defendant argued that the court improperly considered that his actions caused death when death was inherent in the offense he was convicted of, murder. *Id.* at 509. The defendant pointed to the court's statement during sentencing that " 'In aggravation the first guideline indicated in the statute is "whether the conduct of the defendant caused or threatened serious harm." Well, we all know that your conduct caused the ultimate harm. It caused the loss of a human life.' " *Id.* The supreme court determined that "[t]he trial court never indicated *** that it 'considered' the victim's death as an aggravating factor justifying an extended-term sentence. Rather, the record suggests that the trial court statement was simply a general passing comment based upon the consequences of the defendant's actions." *Id.* It further found that even assuming the statement could be construed as the court considering the death in aggravation, remand was unnecessary because it was evident the court placed little, if any, weight on the fact that the defendant caused a death where it relied on various other aggravating factors, including the most significant factor—the victim's young age. *Id.* at 509-10.

¶ 20    Here, as in *Beals*, nothing about the court's comments indicate that it was considering Whitlock's death as an aggravating factor. When the court stated that the theme of the case was death and prison, it was simply reiterating defendant's own words and commenting on the nature of the situation. Additionally, when the court stated that "[t]he crux of this case is that somebody else's life was lost," it was merely noting that the case was not about defendant and his addiction—which the court had been discussing at length—but that they were in court because a

life was lost. The court was refocusing on and acknowledging why they were there to sentence defendant rather than indicating that defendant deserved a harsher sentence due to the death. Further, although the court talked about the deadly nature of the drugs defendant sold, it did so in discussing the circumstances involved in this case—that defendant nearly lost his life from consuming drugs, but that same day sold to Whitlock what was in all likelihood the same drugs that nearly killed defendant. It was these specific circumstances that the court focused on, which it was allowed to do. See *Saldivar*, 113 Ill. 2d at 268-69 (providing that a court can consider the circumstances of the offense in sentencing defendant). Based on the foregoing, we cannot say that the court considered Whitlock's death as an aggravating factor and therefore, the court did not err.

¶ 21    Additionally, as in *Beals*, even if we assume, *arguendo*, that the court's comments could be construed as indicating it considered Whitlock's death as an aggravating factor, it is evident the court placed little, if any, weight on this factor such that remand is not necessary. Specifically, the court found in aggravation the need to deter others. The court further noted that defendant had a criminal history which would have provided him an opportunity to get help with his addiction, and he failed to seek that help. Most significantly, the court relied on the fact that defendant sold the same drugs to Whitlock which he himself had overdosed on earlier that day. Furthermore, defendant was still selling the same kind of drugs approximately a week later. Accordingly, we conclude that if the court placed any weight on the fact Whitlock died, it did not result in a greater sentence. See *Beals*, 162 Ill. 2d at 510.

¶ 22                                B. Excessive Sentence

¶ 23    Defendant argues that his sentence was excessive because the court treated him with the same severity as a major drug dealer. He further argued that the court failed to properly account

8

for the mitigating factors, including a lack of a serious criminal history and that he was driven by his heroin addiction, which he developed as the result of abuse and his sisters' deaths.

¶ 24   "It is well settled that a trial judge's sentencing decisions are entitled to great deference and will not be altered on appeal absent an abuse of discretion." *People v. Jackson*, 375 Ill. App. 3d 796, 800 (2007). A reviewing court "must not substitute its judgment for that of the trial court simply because the reviewing court would have weighed the factors differently." *Id.* at 800-01. A sentence that falls within the statutorily prescribed range is presumptively valid (*People v. Busse*, 2016 IL App (1st) 142941, ¶ 27), and "is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense" (*People v. Franks*, 292 Ill. App. 3d 776, 779 (1997)). "Importantly, it is the seriousness of the crime—rather than the presence of mitigating factors—that is the most important factor in determining an appropriate sentence." *People v. Decatur*, 2015 IL App (1st) 130231, ¶ 12. We presume the circuit court considered the relevant factors and mitigation evidence presented. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. The court is not required to "recite and assign a value to each factor." *Id.* It is defendant's burden to show that the court did not consider the relevant factors. *Id.*

¶ 25   Defendant's 18-year sentence is well within the statutory sentencing range of 6 to 30 years' imprisonment and thus, is presumptively valid. See *Busse*, 2016 IL App (1st) 142941, ¶ 27; 720 ILCS 5/9-3.3(b) (West 2018) (providing that drug-induced homicide is a Class X felony); 730 ILCS 5/5-4.5-25(a) (West 2018) (providing a sentencing range of 6 to 30 years' imprisonment for Class X felonies). Additionally, although defendant asserts that the court did not properly consider the mitigating factors, this is essentially a request for this court to reweigh the factors, which is not for this court to do. *People v. Hageman*, 2020 IL App (3d) 170637, ¶ 19 ("It is not our duty on appeal to reweigh the factors involved in the circuit court's sentencing

9

decision."). Further, there is no evidence the court was treating defendant as a major drug dealer. It is likely that on the same day defendant overdosed, he sold the same drugs to Whitlock. Those circumstances certainly justify the midrange sentence imposed. Therefore, defendant's sentence is not excessive and the court did not abuse its discretion.

¶ 26                                    III. CONCLUSION

¶ 27          The judgment of the circuit court of Kankakee County is affirmed.

¶ 28          Affirmed.